William P. WEST, M.D., Petitioner,

v.

John H. CHAFEE, Secretary of the Navy and Captain S. J. Barcay, Respondents.

No. 2–74–Civ–191.

United States District Court, D. Minnesota, Second Division.

Aug. 11, 1976.

Motion for Relief from Judgment Oct. 7, 1976.

Donald J. Heffernan, Connolly & Heffernan, St. Paul, Minn., for petitioner.

Robert G. Renner, U. S. Atty., Donald F. Paar, Asst. U. S. Atty., Minneapolis, Minn., for respondents.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The question presented by this habeas corpus petition is whether or not petitioner, a doctor, should be released from his naval active duty obligation incurred in exchange for a draft deferment which enabled him to complete his medical school and residency requirements. Dr. West accepted the service obligation under the provisions of the so-called "Berry Plan" in January 1971. He was given a reserve commission, granted a draft deferment valid until completion of his family practice residency, and placed on "inactive status." He received no monetary remuneration. In return he agreed to serve for two years as a naval doctor after finishing his residency. Petitioner completed his residency in the spring of 1974 and was ordered to report to active duty on August 9, 1974. On that date this court granted a temporary restraining order staying Dr. West's activation until the military administrative appeal process had run its course. This process has been completed, resulting in a final denial of Dr. West's exemption by the Secretary of the Navy. The matter is presented on cross-motions for summary judgment. Respondents are the Secretary of the Navy and Dr. West's prospective commanding officer, Captain S. J. Barcay.

The basis of Dr. West's claim for release from his service obligation is the "community essentiality" exemption found in Department of Defense Instruction 1205.1. This instruction provides in relevant part:

> Upon receipt of active duty orders any reserve officer and/or his employer may

submit a request for a delay in entrance on active duty and/or exemption from active duty to a board authorized by the military department concerned to consider such cases. If such action results in disapproval, when the request is based on alleged community essentiality or hardship, the officer and/or his employer may submit an appeal to a higher authority within the military department concerned for final determination of the matter.

Petitioner is currently a doctor in Jackson, Minnesota. That community suffers from a severe shortage of doctors as attested in several letters from community leaders and doctors and by the doctor-patient ratio of at most 1/3,000. He has been working with this community's medical needs since the termination of his residency.

There are no arguments concerning jurisdiction or the propriety of judicial review. It is clear that the court has jurisdiction pursuant to 28 U.S.C. § 2241. *Strait v. Laird*, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972). Dr. West argues that the government has denied him his liberty without due process of law due to the Navy's failure to state reasons for denial of the exemption and due to the lack of any procedure or guidelines for reviewing claims of community hardship. Additionally, he argues that there was no basis in fact for the exemption denial or that it was so arbitrary and irrational that it cannot stand. The government disputes the due process claims and argues that the proper scope of review is the "arbitrary and irrational" standard, not the "basis in fact" standard. It argues that under the former, narrower, standard, the decision is supported by the record.

The court must first examine the factual justification for the decision denying the exemption. A decision for petitioner on the factual record would obviate the necessity of deciding his constitutional claims. This court is ever mindful of the Supreme Court's long-standing guideline that constitutional questions are to be decided only after all other avenues of decision have been exhausted. *Blair v. United States*, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919).

█ The controlling court of appeals decision with regard to the scope of judicial review of a military decision resulting in the activation of a reserve officer is *Chilgren v. Schlesinger*, 499 F.2d 204 (8th Cir. 1974). This case involved a "Berry Plan" doctor who contended that the Air Force's denial of his application for a conscientious objector deferment had no basis in fact. The court agreed and held that the proper procedure for deciding such cases was to require the government to affirmatively show a basis in fact for its rejection of the deferment upon petitioner's showing of a prima facie entitlement to the deferment. Since the policy problem is the same for review of both conscientious objector and community essentiality claims—interference with military decision-making, this court holds that the "basis in fact" test outlines the proper scope of judicial review of the essentiality claim in issue.

█ Petitioner has demonstrated his entitlement to a community essentiality exemption. The most telling evidence for the entitlement is drawn from a comparison of the Jackson, Minnesota doctor-patient ratio with the ratio for petitioner's prospective duty station, the Long Beach, California Naval Base. Although the Jackson figures have allegedly changed for the worse since the institution of this lawsuit, it is clear that as of August 7, 1974, the ratio was 1/3,000. As of July 18, 1975, the Long Beach Naval Base ratio was 1/250. In addition, many of the prospective patients included in the computation of the Long Beach ratio are entitled to use private doctors under an officially sanctioned plan. Dr. West also submitted several letters from community leaders and doctors in the Jackson area in support of his claim. Petitioner has clearly made a prima facie showing for the essentiality exemption on both an absolute and comparative basis.

█ Only two of the four administrative decisions issued by the Navy enumerated reasons for denial of Dr. West's claim. The first decision, rendered by the Chief of

the Bureau of Medicine and Surgery, simply stated that there was a "critical shortage" of naval doctors. The only other reasons for denial were given by the Secretary of the Navy, the final administrative decision-maker. He stated that there was a shortage of forty-three doctors in Dr. West's specialty, that he was in sympathy with the Jackson shortage, and that Dr. West's claim did not meet the required standards for approval when compared to similar cases. There was no indication of the doctor-patient ratio upon which the claim of shortage was predicated and no elucidation of the substance of the standards for approval of essentiality claims. The Navy is required to present a factual as opposed to a mere rational basis for its decision. This surely requires something more than the bald, conclusory statements which comprised the reasons for denial. At the very minimum, it requires the articulation of a standard and an evaluation of the facts which makes clear petitioner's failure to meet that standard. After one and one-half years of administrative review, the Navy has failed to accomplish that task.

THEREFORE, IT IS ORDERED that:

(1) Petitioner's motion for summary judgment and petition for habeas corpus are granted, and

(2) Respondents' motion for summary judgment is denied.

### Motion for Relief from Judgment

The issue raised by respondent's motion for relief from the court's judgment entered August 11, 1976 is whether the court's decision was erroneous in light of the subsequent decision of the Court of Appeals in *Appelwick v. Hoffman*, 540 F.2d 404 (8th Cir., filed Aug. 20, 1976). The motion for relief from judgment is made pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.

The facts generating the *Appelwick* litigation are very similar to those involved in the present case. In both cases, doctors, subject to future military obligations incurred pursuant to the so-called "Berry Plan," obligated themselves to serve in rural communities which faced severe medical care shortages. These community obligations conflicted with their military commitments. In order to reconcile these conflicts, each doctor applied to his respective branch of service for a "community essentiality" exemption. This exemption is established by Department of Defense Instruction 1205.1 X.B. which outlines the application and military review procedure regarding the exemption. The Army and the Air Force have promulgated numerous procedural and substantive regulations detailing their standards for processing and determining the merits of applications for exemptions while the Navy has not adopted any regulations. Dr. Appelwick's application was rejected without a consideration of the merits of his claim on the basis of an Army regulation which summarily barred the claims of applicants who, at the time of application, had never served in the relevant community. Dr. West, on the other hand, was subject to the jurisdiction of the Navy. His claim was rejected after a prolonged, but not necessarily considered, military review of the substance of his claim. This factual variation provides the fundamental distinction between *Appelwick* and the case at bar.

Respondents make two arguments with respect to the application of *Appelwick* to the present case. First, it is claimed that the court erred in balancing the needs of the Navy against the needs of Jackson, Minnesota, the community Dr. West chose, although he had never served in Jackson prior to filing his application for the essentiality exemption. In essence, respondents claim that the court should attribute the rationale contained in the Army regulation at issue in *Appelwick* to the Navy's decision in this case. This argument ignores the fact that the Navy never stated that the fact of no prior service in the community was the reason for the denial of Dr. West's claim. Rather, the very few expressions of reasons which were presented to Dr. West clearly state that the Navy had attempted to balance the relative community and military needs. The court refuses to ignore the

obvious by holding that the Navy reached its decision by incorporating the *Appelwick* rationale. As was noted in the court's previous memorandum and order, the basic problem in this case stems from the Navy's repeated failure to inform Dr. West of the standards by which his application was judged. A holding that the Navy can justify its decision by an implied rationale when the express rationale is found deficient would only compound this problem.

■ Respondents next contend that *Appelwick* establishes the "arbitrary and irrational" standard for determining whether or not the military's factual decision should be upheld. Therefore, the argument goes, this court erred in applying the basis in fact test. *Appelwick* does quote language from *Roth v. Laird,* 446 F.2d 855 (2nd Cir. 1971) which indicates that the arbitrary and irrational standard delineates the proper scope of judicial review. *Roth* does stand for that proposition. However, in light of the issues actually raised in *Appelwick,* the court is not convinced that the Court of Appeals would adopt that position when presented with a case like the present one which involves review of a factual decision as opposed to review of a regulation. *Appelwick* did not review a factual decision since the Army had not considered the merits of Dr. Appelwick's claim. The sole issue presented was whether or not the regulation was valid.

There are two reasons for anticipating appellate hesitation in adopting the arbitrary and irrational standard. First and foremost, *Chilgren v. Schlesinger,* 499 F.2d 204 (8th Cir. 1974) held that the basis in fact test provided the appropriate standard for review of the Air Force's denial of a conscientious objector exemption to a "Berry Plan" doctor. In that case, as in *Appelwick* and the present case, the facts supporting the claim of exemption occurred subsequent to the claimant's acceptance of the future military obligation. Therefore, the problem of allowing a claimant to "escape" his military obligation by a self-serving, after-the-fact change of position was presented. Moreover, the problem of judi-

cial interference with military decision-making was also centrally involved. Both problems were resolved in favor of enhanced judicial review of the military's factual decision. This court cannot discern any functional distinction between *Chilgren* and this case which mandates the use of a different standard of judicial review.

Second, prior authorities indicate that *Appelwick,* as a case involving the validity of a regulation and not involving review of a factual decision, correctly used the arbitrary and irrational standard. This being the case, there is no need to construe *Appelwick* as overruling *Chilgren* by way of dicta. In *United States v. Ekberg,* 291 F.2d 913, 921 (8th Cir. 1961), cert. denied, 368 U.S. 920, 82 S.Ct. 242, 7 L.Ed.2d 135 (1961), Judge Blackmun, writing for the court stated:

We have recently reiterated, with supporting citations, that administrative construction of a statute is entitled to great weight; that regulations are to be sustained unless unreasonable and plainly inconsistent with the statute; that one who claims that a regulation is invalid has the heavy burden of so demonstrating; that regulations, however, cannot be arbitrary; and that they must have a basis in the statute and be within the authority granted the administrative agency. *Review Committee Venue VII, etc. v. Willey,* 8 Cir., 275 F.2d 264, 272, *certiorari denied* 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1522.

In determining whether or not the Army regulation was a reasonable interpretation of the Department of Defense Instruction and whether or not it was consistent with the substantive standard implicit in it, the *Appelwick* court was merely following well-established guidelines for reviewing administrative regulations. Thus, two interpretive choices are presented to this court. It can accept respondents' construction and hold that *Appelwick* overruled *Chilgren* through dicta. Or it can reconcile the cases by interpreting *Appelwick* as properly having followed prior authorities in employing the arbitrary and irrational standard for

review of regulations and not having overruled *Chilgren* with regard to review of factual decisions made by military authorities. The court is inclined to take the latter approach.

Respondents' strongest argument is more implied than express. Essentially, the contention is that *Appelwick* demonstrated a distinct judicial reluctance to aid a claimant in "escaping" his pre-existing military obligation by committing himself to future services in an area in which he has never previously served. This seems to be a correct reading of the opinion. However, it ignores the fact that in *Appelwick* the military fully informed the claimant of the reasons for denial of his exemption application. He was informed of the standard which was used in determining the merit of his application and of the factual deficiencies which caused him to fail to meet that standard. As was outlined in the court's previous memorandum and order, Dr. West's application was not given the same treatment. He was not informed of any judgmental standards, and it appears that no general criteria were ever adopted by the Navy. Therefore, any inequity which might be caused by Dr. West's "escape" is far outweighed by the inequity resulting from the taking of official action without rules of uniform application and without communication to the person affected of the relevant standards and the factual problems causing a failure to meet those standards.

Respondents have cited several other cases in which community essentiality applications have been denied. In arguing that these cases should control, respondents make the same mistake which they made regarding the precedential value of *Appelwick*. All of the cases cited are cases involving Army service obligations. The Army has promulgated numerous regulations outlining the substantive criteria by which each application will be judged. The applicant in every case was informed of these criteria and of the reasons why he failed to meet them. Dr. West never received this procedural protection. The Navy has promulgated no regulations.

This lack of standards and factual explanation is not only unfair to the applicant but presents the definite possibility that the Navy will not be able to consider all applications uniformly. Action taken in such a context not only lacks a factual basis but is also arbitrary and irrational. Therefore, even if it is later determined that the arbitrary and irrational standard should apply, the court would be of the opinion that the Navy's action in this case should be reversed.

In an extensive footnote to *Appelwick*, Judge Bright suggested that the Department of Defense Instruction was intended to be merely procedural and that the services were to give it substantive content by means of regulation. However, for purposes of the opinion, he assumed that the Instruction had some substantive content. Given that the Instruction has only minimal substantive content at best, it is clearly incumbent upon each service to flesh out the Instruction through regulations or other formal procedures and communicate the standards contained therein to the applicant. In the absence of such an undertaking, enhanced judicial review is obviously necessary. As the cases attest, the Army has accomplished this task in admirable fashion. The Navy has not. The fact that the Army has taken proper, formal steps to articulate standards and review applications in light of those standards cannot be used by the Navy at this late date to compensate for its failure to accomplish the same task.

THEREFORE, IT IS ORDERED that respondents' motion for relief from judgment is denied.