James E. APPELWICK, M.D., Appellant,

v.

Martin R. HOFFMAN, Secretary of the Army and Linden E. Schuyler, Adjutant General, Appellees.

No. 76–1564.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 6, 1976.

Decided Aug. 20, 1976.

Donald J. Heffernan, St. Paul, Minn., Wilson M. Kleibacker, Madison, S.D., on brief, for appellant.

William F. Clayton, U.S. Atty., and Peter J. Horner, Asst. U.S. Atty., U.S. Dept. of Justice, Sioux Falls, S.D., John W. Matthews, Dept. of the Army, Washington, D. C., on brief, for appellees.

Before GIBSON, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

James E. Appelwick, M.D., a physician and surgeon who holds a reserve commission as captain in the United States Army, sought habeas corpus relief from military orders requiring him to report to Fort Bragg, North Carolina, for two years of active military duty as a physician, commencing on July 7, 1976. Appellant Appelwick appeals from the order of the district court[1] denying him relief. He also unsuccessfully sought an injunction pending appeal from the district court. Appelwick, thereafter, requested an injunction pending appeal under F.R.A.P. Rule 8. The parties orally argued Appelwick's application for an injunction pending appeal,[2] and have submitted briefs on an expedited basis addressed to the requested injunction and merits of the appeal. For reasons stated below, we deny the request for an injunction pending the appeal and affirm the district court.

Appelwick, a native of Madison, South Dakota, enrolled in the Army's "Berry Plan" during his residency training in 1971. Under this plan, a medical doctor receives a commission as a reserve officer and a deferment of active duty which enables the physician to complete his residency training without interruption by the draft or any active duty obligation.

Appelwick completed his residency training in June of 1976, at which time the Army assigned him to two years' active duty. Before receiving his orders, Appelwick had agreed with his home town of Madison to serve that community as a surgeon upon completion of his residency in Yankton, South Dakota. In order to avoid active duty and return to Madison, Dr. Appelwick applied for an exemption from active duty pursuant to a Department of Defense Instruction which authorizes exemptions from active duty for medical reserve officers for reasons of "community essentiality or hardship."[3]

The record establishes, and the district court found, that the community of Madison, South Dakota, is in grave need of a surgeon. The district court determined further that Madison will suffer "irreparable harm by requiring the petitioner [Dr. Ap-

---

1. United States District Court for the District of South Dakota, The Hon. Fred J. Nichol, Chief Judge.

2. On July 9, 1976, this court temporarily enjoined the military from enforcing its orders directed to Captain Appelwick until the court might hear the application for an injunction pending appeal. Circuit Judge Bright conducted a hearing on said application on July 20, 1976.

3. The Department of Defense direction on community hardship, D.o.D. Instruction 1205.1 X. D., reads:

Upon receipt of active duty orders any reserve officer and/or his employer may submit a request for a delay in entrance on active duty and/or exemption from active duty to a board authorized by the military department concerned to consider such cases. If such action results in disapproval, when the request is based on alleged community essentiality or hardship, the officer and/or his employer may submit an appeal to a higher authority within the military department concerned for a final determination of the matter.

pelwick] to fulfill his active duty military obligation * * *."

The Army denied Dr. Appelwick's application for an exemption from active duty. In denying the request, the Army recognized that Madison needed the services of a local surgeon, and that Madison had made reasonable efforts at recruiting a surgeon but had been able to obtain a commitment from only Dr. Appelwick, a native son. Notwithstanding Madison's need, the Army rejected the exemption request on the basis of its own directive implementing the Department of Defense Instruction. The Army directive, among other things, provides:

b. Requests from physicians, dentists, and allied specialists will be disapproved and ruled *not essential* to communities where they have never practiced. [Army Message 141533Z, ¶ 2 b. (emphasis in original).] [4]

Appelwick contends that he is entitled to habeas corpus relief because the Army directive with reference to community hardship and essentiality for health services conflicts with the Department of Defense Instruction previously quoted, is arbitrary and capricious, violates his substantive due process rights, and unfairly discriminates against rural areas. Finally, Appelwick asserts that by the time of the district court hearing on his petition, he had established the "regular practice" the Army requires, thus entitling him to relief.

Our consideration of Dr. Appelwick's claim is taken in light of the limited nature of judicial review of actions taken by military authorities. The narrow compass of our inquiry was outlined in *Roth v. Laird,* 446 F.2d 855, 856 (2d Cir.1971):

The district court may review action taken by military authorities to insure that it is not violative of applicable regulations, * * * or to insure that their decision is

not so arbitrary and irrational that it cannot stand * * *.

*Roth* is especially instructive, because it too involved a petition by a Berry Plan physician seeking to overturn the Army's denial of a community hardship deferment from active duty.

By applying its requirement of prior regular practice in the community, Dr. Appelwick contends, the Army rejected his application without ever considering Madison's need for his services, which he claims to be contrary to the Defense Department's Instruction on the subject. We reject this argument. We must bear in mind that

[s]ince this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. * * * [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. [*Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), *quoting Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).]

In *Tallman,* it was alleged that certain actions taken by the Secretary of the Interior regarding leases of oil and mineral rights conflicted with Executive Orders of the President. The Court concluded:

The Secretary's interpretation may not be the only one permitted by the language of the orders, but it is quite clearly a reasonable interpretation; courts must therefore respect it. [380 U.S. at 4, 85 S.Ct. at 795.]

We likewise conclude that the Army Message, while perhaps not the only possible interpretation of the D.o.D. Instruction, is clearly a reasonable one which must be followed by this court. On its face, the Instruction simply provides that in commu-

---

**4.** This message has now been incorporated into an Army regulation as follows:

b. Physicians and dentists who are not at the time of application performing the health service needed by the community or who

have never performed on a regular basis in a community which is alleged to suffer hardship are not eligible for delay or exemption. [AR 601–25, ¶ 2–19b.]

nity hardship cases, the doctor or his employer "may submit a request * * * to a board authorized by the military department concerned to consider such cases." Dr. Appelwick was allowed to submit his request to just such a board. The Army regulation does not illegally deprive appellant of a hearing; it simply establishes a substantive standard of hardship or essentiality to be applied by the board. Dr. Appelwick's claim, therefore, comes down to the contention that the Army regulation is inconsistent with a substantive standard of essentiality or hardship implicit in the Department of Defense regulation.[5]

■ The Army Message is a reasonable interpretation of any substantive content in the phrase "community essentiality or hardship" as used in the Defense Department Instruction. The community hardship and essentiality exemption obviously was designed "to prevent the loss of citizens whose absence would have an immediate, detrimental impact on their community, such as the loss of a community's only physician," *United States ex rel. Hutcheson v. Hoffman,* 439 F.2d 821, 823 (5th Cir.1971), when the community has already come to depend on that physician's services. This does not mean that the Army must allow a medical resident who does not provide any community with essential services during his resi-

dency to escape active duty by committing himself to future services in an area that "needs" him. It is not unreasonable for the Army to take the position that a community suffers no hardship from the loss of a physician to the military when the community has never had the benefit of that physician's services.[6] Appelwick's attack on the Army's "regular practice" requirement is soundly refuted by the reasoning of *Sofranko v. Froehlke,* 346 F.Supp. 1380 (W.D.Tex. 1972), a case which also involved an application by a physician for a delay of active duty based on alleged community hardship where the physician had never before served in the rural community he proposed to serve:

> Petitioner was not performing service "* * * essential to the maintenance of health, safety or welfare of his community." * * * There was no question of replacing Petitioner's services in the community because they were never rendered. * * * There is no apparent intent [in the community hardship provisions] to accomplish the redistribution of specialized medical services to rural areas, however laudable that aim might be.
>
> *       *       *       *       *       *
>
> It does not appear to this Court that the public interest favors the relief requested by Petitioner. If injunctive re-

---

5. It is not at all certain that the Defense Department Instruction was intended to do more than establish procedural forms, leaving the formulation of substantive rules to the military departments. General authority to order members of reserve components in medical, dental, or allied specialties who have not served at least one year of active duty, and who are under 35 years of age, to active duty for not more than two years is vested in the President by 50 U.S.C. App. § 454(*l*)(1) (1970). The President delegated his authority to the Secretary of Defense in Executive Order No. 10762, 23 Fed.Reg. 2119, March 28, 1958. This authority was redelegated to the secretaries of the three military departments, *see* 32 C.F.R. § 76.6 (1975). This statutory and administrative pattern appears to give the Army the power to establish whatever substantive guidelines it deems desirable. As noted above, there is nothing on the face of the D.o.D. Instruction inconsistent with the Army's formulation of substantive standards to be applied. For the purposes of this opinion, however, we will as-

sume that the D.o.D. Instruction does impose some substantive limits on the Army's rule-making authority.

6. In its letter of March 30, 1976, to Senator George McGovern of South Dakota, the Department of the Army explained its position as follows:

> The purpose of the Army's community hardship position in regulations is not to reallocate the medical resources of the country but to insure that vital health services are not completely disrupted by the removal of an individual whose services cannot be replaced.
>
> The Army also noted in its letter to Senator McGovern that an exception to its policy was not warranted as Lake County, South Dakota, in which Madison is located, did not appear "on the Critical Health Manpower Shortage Area listing in the Federal Register or on the Medically Underserved listing published by the Department of Health, Education and Welfare."

lief were proper on such a meager showing, then any "Berry Plan" physician, or indeed any reserve officer eligible to apply for a similar deferment, might disrupt military planning and avoid an undesired assignment by the simple expedient of applying for employment in a rural area. He would incur no obligation thereby. If he succeeded on the merits of his cause, he could escape his military obligation as well.

[The Army's community hardship deferment plan] was designed to serve a legitimate public purpose. It permits deferment of active duty so that communities might have time to replace citizens whose services are critically needed. * * * If, as in this case, no service, essential or otherwise, was ever performed, the entire question becomes an academic exercise. * * * [I]t would be improper for a Court to grant an injunction * * *. Such an order would do a grave disservice to the public interest and would flout both law and logic. [346 F.Supp. at 1382, 1383.]

Although the petitioner in *Sofranko* had already entered active duty by the time the court considered his complaint, we do not consider that a material distinction in light of *Roth v. Laird, supra.*

Dr. Appelwick argues that the Army's requirement of "regular practice in the community" makes it virtually impossible for a rural community in need of a doctor to obtain a Berry Plan physician just finishing residency and subject to his active duty obligation, because medical residency programs generally are offered only in hospitals located in urban areas. This argument is without substantial merit.

The people of Madison, South Dakota, share a problem faced by much of rural America, the inability to secure doctors willing to practice within their community. While the Army's "regular practice" requirement for community hardship exemptions has frustrated Madison's efforts to obtain a qualified surgeon at this time, Madison residents are not left without opportunity for adequate medical care. As is often true of rural areas without their own doctor, there is a medical center in the general vicinity of Madison. At oral argument, counsel for Appelwick conceded that Sioux Falls, South Dakota, within an hour's drive of Madison, offers very adequate medical services and facilities.

█ Finally, we cannot accept Appelwick's argument that because he started practice in Madison while pursuing his administrative and judicial remedies, he is now in compliance with the Army's regulation and must be granted relief. Were we to accept appellant's argument, the Army's "regular practice" requirement would be a nullity. Any reserve officer could avoid the requirement simply by applying for the exemption and starting practice pending a decision. We think it entirely reasonable for the Army to insist that the officer applying for a community hardship exemption comply with the "regular practice" requirement on the date of his application to the Army for the exemption.

█ The record here shows, and the district court found, that the Army gave full consideration to petitioner's claim for an exemption, and denied that claim only after determining that it did not satisfy the conditions set out in the Army regulations. Those regulations cannot be said to be arbitrary, unreasonable, or in any respect unconstitutional. Under these circumstances, the district court could not interfere with the Army's command that Appelwick report for active duty.

Accordingly, the order of the district court denying habeas corpus relief is affirmed. The temporary injunction heretofore granted by this court pending a hearing on appellant's application for an injunction pending appeal is now dissolved. The application for an injunction pending this appeal is denied.