William Daniel NICHOLSON, III

v.

Donald RUMSFELD, Secretary of Defense, et al.

No. CA 3–76–1069–C.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 27, 1977.

Tom Thomas, Kolodey & Thomas, Dallas, Tex., J. Bryon Holcomb, Bremmerton, Wash., for petitioner.

Michael P. Carnes, U. S. Atty., Judith A. Shepherd, Asst. U. S. Atty., Dallas, Tex., for respondents.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Petitioner William Daniel Nicholson, III, filed this action for Writ of Habeas Corpus and for declaratory, injunctive, and manda-

mus relief on August 12, 1976, challenging official orders that he report for active duty with the United States Air Force. Simultaneously, he filed a Motion for a Temporary Restraining Order which, after a hearing, was granted on August 13, 1976. On October 6, 1976, this cause came on before the Court for an evidentiary hearing and an Order was entered on October 8, 1976, enjoining Respondents, pending trial on the merits, from ordering Petitioner to active duty. On December 29, 1976, trial on the merits was had, and it is the opinion of this Court that Respondents' right to order Petitioner to active duty under the "Berry Plan" agreement must be declared void.

Petitioner is a medical doctor who in 1967 agreed to participate in the "Berry Plan" which permits individuals to become reserve officers in the military and to defer fulfillment of their active military obligation pending completion of medical training. In 1971, Petitioner vacated his prior "Berry Plan" agreement and approved a new six-year agreement.

Under the provisions of pertinent Department of Defense regulations, DOD 1205.-1(X)(D), reserve officers such as Dr. Nicholson may apply for a delay or exemption from active duty under the "Berry Plan" for reasons including community essentiality. Regulations promulgated by the Air Force, AFR 45–26(23), implement the Department of Defense community essentiality exemption for that branch of the military.

In compliance with the applicable regulations, Petitioner did, on June 25, 1976, submit his request for exemption from active duty claiming that his serves as a physician were essential to the community of Freeport, Texas. In support of his request, Dr. Nicholson submitted numerous letters from physicians and community leaders in the Freeport area attesting to his prior work there and indicating a critical local need for his continued services. Also submitted was a letter from the Texas Medical Association which presented statistical data on the physician-patient ratios for the Freeport area and the State of Texas as a whole.

A panel of Air Force medical officers was convened on June 29, 1976, to consider Dr. Nicholson's request for exemption. By letter of June 30, 1976, Colonel Robert M. Dean, USAF, informed Dr. Nicholson that his request for exemption had been denied unanimously by the Board advising him that "[y]our services as a general surgeon are needed at the USAF Hospital, Columbus Air Force Base, Mississippi." On July 13, 1976, Dr. Nicholson appealed this denial to the Secretary of the Air Force and was advised by letter of August 11, 1976, from Colonel Richard D. Hansen, USAF, that "[t]he Secretary of the Air Force determined that you should not be exempted from entering active duty." Upon being advised that his administrative appeal had been denied, Dr. Nicholson filed this action seeking Habeas Corpus, injunctive, declaratory, and other relief.

■ In considering this action, the Court is first presented with the government's contention that the petition is barred by Dr. Nicholson's failure to exhaust his administrative remedies. Specifically, it is claimed that Dr. Nicholson should have appealed the decision of the Secretary of the Air Force to the Air Force Board for the Correction of Military Records which has plenary jurisdiction to correct any injustice affecting Air Force personnel. The government concedes, however, that a decision of the Air Force Board for the Correction of Military Records is not binding upon the Secretary of the Air Force. The government's position is apparently that the Board might present recommendations that would persuade the Secretary to reverse his earlier decision. This remote possibility of a remedy does not justify the invocation of the doctrine of exhaustion of administrative remedies. When the Secretary of the Air Force rejected Dr. Nicholson's appeal of the ad hoc panel's denial, Petitioner had effectively exhausted his administrative remedies.

■ The next question to be addressed is whether judicial review is appropriate under the circumstances of this case. The Petitioner has demonstrated that Department of Defense and Air Force regulations provide for exemptions from active duty based upon community essentiality, that he has complied with all applicable regulations in requesting an exemption, that the facts in his case constitute a *prima facie* case for approval of an exemption, that his request was denied, and that he has exhausted his administrative remedies. Further this Court finds that refusal of review would greatly prejudice Petitioner who has alleged violation of his Due Process rights and that review will not interfere significantly with the military function. Under the rule in this Circuit, therefore, Petitioner has satisfied all requirements to obtain judicial review for a determination of whether military authorities have complied with their own regulations or whether Petitioner's Constitutional rights have been violated. *Mindes v. Seaman,* 453 F.2d 197 (5th Cir., 1971).

As to the standard to be employed in reviewing the Air Force action affecting Petitioner, he submits that the military must show that there is a basis in fact for its decision. Respondents, on the other hand, would have the Court limit its review to determining whether the Air Force so clearly abused its discretion as to have been irrational, arbitrary or capricious.

■ While Petitioner has urged this Court to review the regulations and criteria by which requests for community essentiality exemption are decided, we find it unnecessary to do so and, for purposes of this opinion, assume that such regulations are proper. The only question, therefore, is whether the factual decision made by the Air Force under its regulations is so arbitrary, irrational or capricious that it cannot stand. There is substantial case authority in this Circuit for application of the basis-in-fact standard in such a setting. *Silverthorne v. Laird,* 460 F.2d 1175 (5th Cir., 1972); and *White v. Callaway,* 501 F.2d 672 (5th Cir., 1974).

With further reference to the factual basis standard, it would seem that there could hardly be any standard less demanding. If administrators are unable to demonstrate

some factual basis for their factual decisions, then meaningful judicial review would be impossible as there would be nothing to analyze except the rules themselves and the administrators' own assertions that they did, indeed, comply with those rules. Although this Court does indulge the presumption that government officials carry out their duties in a lawful manner, this presumption alone cannot withstand the challenge of a petitioner who makes out a *prima facie* case that he has suffered arbitrary denial of his rights under pertinent regulations. In searching for some basis in fact to support the Air Force decision denying Petitioner's request for exemption, this Court accepts the repeated cautions of numerous courts with respect to the limitations of the judiciary in reviewing decisions of military authorities.

Upon analysis of the administrative record submitted by the Air Force, we find that Dr. Nicholson's exemption was reviewed by a panel of five Air Force medical officers designated as the "Reserve Medical and Dental Officer Delay and/or Exemption From Active Duty Board" (the Board). The minutes of the Board meeting, consisting of three pages, stated that the Board was convened in accordance with Department of Defense 1205.1 and AFR 45–26 to consider Dr. Nicholson's request and that the criteria used to determine community essentiality were as follows:

"a. The services performed by the physician are essential to the maintenance of the health, safety or welfare of his community.

b. The removal of this physician from the community would result in an extreme shortage or elimination of an especially critical community service.

c. The service cannot be performed by other persons residing in the area concerned.

d. The physician cannot be replaced in the community by another physician who can perform such service within the time allotted by a postponement of entry onto active duty.

e. The physician will be ruled not essential to a community where he has never practiced.

f. The needs of the civilian community must be balanced against the needs of the military service."

The minutes also reflect that eight letters were before the board in support of Dr. Nicholson's request for exemption.

Following these recitations, which constitute paragraphs 1 through 6 of the minutes, is paragraph 7 which purports to give the basis for the board's denial of Dr. Nicholson's request. After noting quite accurately that the letters supporting Dr. Nicholson's request testify to the need in the Freeport area for his services, the minutes proceed to indicate that Dr. Nicholson's request was denied on the basis of criterion "e" to the effect that a physician will be ruled not essential to a community where he has never practiced. Quoting directly from the minutes, paragraph 7 states that:

". . . since Doctor Nicholson has been in Dallas for the past five years, it appears that he could not have practiced in the community of Freeport even on a part-time basis since Freeport is approximately 300 miles from Dallas."

This assertion in the minutes is, of course, directly contrary to all of the letters that were before the Board stating that the Petitioner had been practicing medicine in Freeport by providing hospital emergency room coverage at the Community Hospital of Brazosport on weekends for a period of five years. Apparently, the Board concluded that it was the victim of a conspiracy to defraud implicating numerous physicians and community leaders in Freeport, Texas.

In support of its conclusion that Dr. Nicholson had never practiced in Freeport, the Board referred to the Petitioner's previous request for a hardship discharge. Again quoting from paragraph 7 of the minutes:

". . . Doctor Nicholson's original request was for a hardship discharge based upon his wife divorcing him if he relocated from the Dallas area . . . Therefore, it seems incongruent that Doctor Nicholson could move to Freeport and not

lose his wife but could not move to Columbus AFB, Mississippi."

Because the Board was convened to review the Petitioner's request for community essentiality exemption, the fact that he had previously sought a hardship discharge was irrelevant to the community essentiality question. Although the earlier hardship discharge matter would have had a bearing upon the credibility to be accorded Dr. Nicholson's own letter requesting an exemption, it hardly seems sufficient to justify ignoring the letters from physicians and community leaders in the Freeport area supporting Dr. Nicholson's claim that he had been practicing in Freeport. If anything, the reference to the prior efforts to obtain a discharge indicate a bias on the part of the Board against Dr. Nicholson due to his disinclination to report for active duty with the Air Force.

Finally, the minutes of the Board meeting state what appears to be a "fall-back" position to justify denial of his request for community essentiality exemption:

"Regardless [of whether he ever practiced in Freeport], based upon the circumstances and after careful consideration of all documents, the needs of the Air Force were determined to be greater."

This apparently refers to criterion "f" which states that the needs of the civilian community must be balanced against the needs of the military service. The only other comment in the minutes bearing on this point is the statement in paragraph 8 to the effect that "[t]he needs of the Air Force Medical Service in Doctor Nicholson's specialty are at this time not being adequately met."

■ While this Court recognizes its own inability to determine the medical manpower needs of the military, again it seems that the military must show some factual basis to support a finding that its own needs are greater if such a decision is to be upheld in the face of a *prima facie* case that Dr. Nicholson's services are essential to the community of Freeport. If this were not so, the military could tell a modern-day Albert Schweitzer that his skills were need-

ed more by the armed forces than by the community of Lambarene and no court could look behind this bald assertion of fact.

In the Nicholson case, the Texas Medical Association reports that the ratio of general surgeons to population in the Freeport area is about one surgeon per 50,000 people. Comparable figures for Columbus Air Force Base would be about one surgeon for every 7,000 to 12,000 potential patients, depending upon the figures being used. It is important to note, however, that the figures for Columbus Air Force Base are not in the administrative record but were produced after the fact by the Air Force in response to interrogatories filed by Petitioner in connection with this action. In addition, the initial response of the Air Force to Petitioner's interrogatories was that no data as to the needs of Columbus Air Force Base were in existence and that such information would have to be assembled. This further supports the belief of this Court that the reference in the minutes of the Board to the greater need of the Air Force is simply a "fall-back" argument. There is nothing whatsoever to indicate that the Board did any balancing of civilian against military needs.

Because of the unfavorable statistics on medical needs at Columbus Air Force Base, the government argues that the needs of Freeport must be balanced against the needs of the Air Force as a whole rather than the needs at Columbus AFB. This makes no sense, however, unless we are to conclude that the Air Force is so inefficient that it is assigning surgeons to Columbus AFB when needs are greater at other bases. The record of Dr. Nicholson's administrative appeal to the Secretary adds nothing to support the denial of his request for exemption.

■ A review of the administrative record in this case can only lead to the conclusion that the Air Force acted arbitrarily, irrationally, and capriciously in denying Dr. Nicholson's request for exemption. Considering the evidence before the Board, we are unable to see how it could have found either that Dr. Nicholson had

never practiced in the Freeport area or that the medical manpower needs of Columbus Air Force Base are greater than those of Freeport, Texas. As to the latter question, if there are any special factors to be considered in balancing military against civilian needs, the government has not suggested what they might be. Certainly, there is no apparent basis for either of the Board's stated conclusions.

■ While Petitioner seeks a determination that the arbitrary, irrational and capricious denial of his request for community essentiality exemption constitutes a denial of his Due Process rights, such a determination of Constitutional rights is unnecessary for a final and complete disposition of this action and should, therefore, be avoided. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936). As the government pointed out in its pleadings and oral argument, Petitioner's relationship with the Air Force was essentially contractual and this case can, therefore, be decided on basic contract principles. *Peavy v. Warner*, 493 F.2d 748 (5th Cir., 1974). Specifically, Dr. Nicholson agreed to accept a commission as a reserve Air Force officer and to serve two years on active duty with the Air Force in consideration of the promise of the Air Force to defer ordering him to active duty service pending completion of his medical training.

■ There is, however, an express condition to this obligation in the "Statement of Understanding" which Petitioner signed on October 2, 1967. The government correctly characterizes this "Statement of Understanding" as the "heart" of Petitioner's contractual relationship with Respondents. The "Statement" contains the following provision:

> "I understand . . . that I hereby voluntarily agree to serve my active duty tour when so ordered by the Secretary of the Air Force *unless sooner discharged or otherwise relieved of my active duty obligation in accordance with existing law or regulations and standards* prescribed by

the Secretary of Defense or the Secretary of the Air Force." [Emphasis added.] We believe that the emphasized language constitutes an express condition to Petitioner's performance of his contractual duty to report for active duty when called; Petitioner's obligations would cease to exist if he were "discharged or otherwise relieved of . . . [his] active duty obligations . . . ." The existence of this express condition logically gives rise to a concurrent implied condition: that the Air Force would fairly consider any request or application for discharge, exemption or deferral submitted by Petitioner in compliance with applicable law and regulations. In short, the Air Force had a contractual duty to afford fair consideration to Petitioner in ruling on his request for community essentiality exemption, an obligation which the Air Force failed to perform when it arbitrarily denied Petitioner's request. The failure was a willful breach that brings into question the good faith of the Air Force in dealing with Petitioner; it must, therefore, be deemed material.

Although this Court is not prepared to hold that the breach was total requiring a rescission of all obligations arising under the contract, it is of such magnitude to justify this Court in declaring void Petitioner's obligation to report for active duty service. This is not to say that Dr. Nicholson may not in the future be ordered to active military duty on the same basis as other physicians who have not participated in the "Berry Plan." Neither does it deny Respondents the right to assign Petitioner to an Air Force Reserve unit in the vicinity of Freeport for the remainder of his six-year obligation which ends November 29, 1977. Instead, the condition in question was tied to the Respondents' contractual right to order Petitioner to active duty and the breach of that condition only discharges Petitioner's related active duty obligation.

Plaintiff is requested to prepare and submit an appropriate form of judgment providing for cancellation of the bond previously posted. Costs of this action are to be borne by the respective parties.