**William P. WEST, M.D., Appellee,**

v.

**John H. CHAFEE, Secretary of the Navy, and Captain S. J. Barcay, Appellants.**

No. 76–1876.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1977.

Decided Aug. 17, 1977.

Carl Eardley, Appellate Sec., Civ. Div., U. S. Dept. of Justice, Washington, D. C., for appellants; Robert G. Renner, U. S. Atty., Minneapolis, Minn., Morton Hollander, Washington, D. C., Rex E. Lee, Asst. Atty. Gen., Washington, D. C., on brief and Irving Jaffe, Acting Asst. Atty. Gen., Washington, D. C., on appellants' reply brief.

Donald J. Heffernan, St. Paul, Minn., on brief, for appellee.

Before BRIGHT and ROSS, Circuit Judges, and URBOM, District Judge.*

URBOM, District Judge.

The appellee, William P. West, a reserve Naval officer, filed a petition for writ of habeas corpus, seeking a determination that his military custody by reason of active duty orders from the Department of the Navy was unlawful. Appellants, the Secretary of the Navy and a Navy captain, defended the activation on the ground that under an existing agreement between the parties West was obligated to serve two years' active duty in the Navy and his application for an exemption from that obligation had been properly denied. On cross-motions for summary judgment, the district court granted the petition. *West v. Chafee,* 421 F.Supp. 25 (D.Minn.1976). Appellants (hereinafter referred to as the Navy) have filed a timely notice of appeal.

West is a medical doctor with a specialty in family practice; he now practices in the rural community of Jackson, Minnesota. Prior to completing his medical education he entered into an agreement with the Navy under the provisions of the "Berry Plan."[1] Under the agreement, West re-

---

* WARREN K. URBOM, Chief Judge of the United States District Court for the District of Nebraska, sitting by designation.

1. Armed Forces Physicians' Appointment and Residency Consideration Program, 32 C.F.R. § 58 (1976).

ceived a Naval reserve commission and a deferment from active duty until completion of residency training in his specialty, and he obligated himself to serve on active duty for two years, after his medical training. West's residency terminated in 1974; in the spring of that year he received orders to report for active duty commencing in August, 1974.

Department of Defense Instruction 1205.1 (hereinafter referred to as DOD 1205.1) provides:

> Upon receipt of active duty orders any reserve officer and/or his employer may submit a request for a delay in entrance on active duty and/or exemption from active duty to a board authorized by the military department concerned to consider such cases. If such action results in disapproval, when the request is based on alleged community essentiality or hardship, the officer and/or his employer may submit an appeal to a higher authority within the military department concerned for a final determination of the matter.

On July 17, 1974, West applied for an exemption under DOD 1205.1, based on community essentiality—the need of Jackson, Minnesota, for his medical services. His request was denied by the appellant Captain S. J. Barcay by letter dated July 26, 1974.[2] On August 8, 1974, West filed his petition for a writ of habeas corpus. The next day the district court granted a temporary restraining order, which prevented further proceedings to activate West. Administrative remedies were still pending; on October 30, 1974, the denial of the exemption was reaffirmed.[3] West's petition in the district court was held in abeyance until April 6, 1976, when the decision to deny his application for an exemption was upheld by the Secretary of the Navy.[4] Thereafter, the matter was submitted to the district court on cross-motions for summary judgment on the basis of the administrative record. That record consisted of the Naval personnel documents concerning West, his application for and showing in support of the requested exemption, and responses from Navy officials. Throughout the administrative process the Navy asserted as the only basis for the denial that the Navy was experiencing a shortage of physicians and consequently needed West in active service.

The district court granted West's petition on the grounds that the denial of the exemption had no basis in fact and that West had been denied due process because the Navy had no established standards for passing upon the request. The issues presented by this appeal are:

1. Whether the decision to deny the exemption was justified under the applicable standard of review; and

2. Whether West was denied due process by the lack of any substantive regulations or articulated standards relative to disposition by the Navy of applications for exemptions under DOD 1205.1.

Because we resolve both issues in favor of the Navy, we reverse the decision of the district court.

## I.

In the district court attention was focused on the standard of review which applies to the Navy's decision to deny West's application for an exemption. The Navy

---

**2.** Included were these statements: "At this time there is a critical shortage of doctors throughout the Navy. If you do not report in your turn there will be no other doctor available to take your place. * * * [Your assistance to the community] would place in jeopardy our ability to provide adequate health care to our active duty, dependent and retired personnel."

**3.** The ground cited was "we must assure adequate medical care is available to our Navy personnel and their families. * * * To

[grant your release from the obligation to serve] would jeopardize our own health program."

**4.** The letter from the Secretary of the Navy said, "At this time, we anticipate the Navy will be short 43 Family Practice Specialists in the coming year * * * [Y]our claim of community essentiality * * * did not meet the required standards for approval on a comparative basis with similar requests from other service members."

argued that the decision could be subject to judicial interference only if it were arbitrary and irrational. West insisted that the decision should stand only if the record disclosed a basis in fact supporting it. The district court adopted the latter approach and concluded that, because West had made an adequate showing of community essentiality and the record contained no evidence in support of the Navy's conclusion that its need for West was paramount, West was entitled to the exemption.

In this court counsel have continued the debate. West cites cases in which courts have reviewed military determinations of applications for exemptions from service under the conscientious objector provision of the Selective Service Act.[5] In these cases, whether or not a basis-in-fact standard was announced, it is apparent that the reviewing court was prepared to reject the military decision, if the applicant had made out a prima facie showing of entitlement to the exemption and the record did not contain evidence to controvert that showing. See, *e. g., Sanger v. Seamans,* 507 F.2d 814 (9th Cir. 1974); *Chilgren v. Schlesinger,* 499 F.2d 204 (8th Cir. 1974); *Hammond v. Lenfest,* 398 F.2d 705 (2nd Cir. 1968). The Navy argues that these conscientious objector cases are inapposite and that the correct standard is, as stated in *Appelwick v. Hoffman,* 540 F.2d 404 (8th Cir. 1976), that a military decision to deny an exemption under DOD 1205.1 may be reviewed only to determine whether it was arbitrary and irrational.

■ We are not disposed to alter this court's declaration in the *Appelwick* opinion at 406 that:

5. 50 U.S.C.App. § 456(j) (1970).

6. Cf. *Ornato v. Hoffman,* 546 F.2d 10 (2nd Cir. 1976) (holding that, in the absence of a regulation providing a substantive standard for consideration of applications under DOD 1205.1, a denial is virtually a matter of unreviewable military discretion).

7. West also argues that the decision is subject to attack because the Navy failed to comply with DOD 1205.1 in that the record does not establish that the application was ever submitted to a board, as required in the instruction. This does not appear to have been a

* * * The narrow compass of our inquiry was outlined in *Roth v. Laird,* 446 F.2d 855, 856 (2d Cir. 1971): The district court may review action taken by military authorities to insure that it is not violative of applicable regulations, * * * or to insure that their decision is not so arbitrary and irrational that it cannot stand * * *

*Roth* is especially instructive, because it too involved a petition by a Berry Plan physician seeking to overturn the Army's denial of a community hardship deferment from active duty.

See also, *United States ex rel. Schonbrun v. Commanding Officer,* 403 F.2d 371 (2nd Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969).[6]

■ In the absence of applicable regulations, we cannot find the action violative of applicable regulations, of course, but we turn to the question of whether the Navy's decision was arbitrary and irrational.

West argues that even under the arbitrary-and-irrational review standard, the denial of his application for an exemption is vulnerable, because there is nothing in the record to support the Navy's conclusion that, due to a critical shortage of Navy doctors, West should not be excused from active duty.[7]

Reaffirmation of the *Appelwick* standard of review does not eliminate all need for some factual foundation for a decision by the Navy. We agree that one ground for finding a decision to have been arbitrary and irrational is that it was made without

contested issue in the trial court. It is not alarming that the record does not show with particularity the existence of a board—the Navy had no reason at any point in these proceedings to make such a showing. It is noted, however, that the letter of the Chief of Naval Personnel of October 30, 1974, to West said, "Your request has been given careful consideration by a board of officers established to assist the Chief of Naval Personnel in determining the merits of such requests * * * [I]t was the consensus of the Board that your request not be approved."

any revealed reason [8] or that the announced reason was without an adequate factual base.[9] Nonetheless, when a reason is given, the amount of factual support necessary to meet the test varies with the nature of the reason.

Here, the Navy's declared reason was its own military need. Measuring military need is peculiarly a military matter, the kind of undertaking the courts should be astute to leave to the military.[10] A decision based upon an asserted lack of a *community's* need (or, analogously, the lack of a claimed individual hardship), as distinguished from the *Navy's* need, more readily yields to judicial scrutiny and it is with such decisions that most cases have dealt. See, e. g., *Ornato v. Hoffman,* 546 F.2d 10 (2nd Cir. 1976); *United States ex rel. Hutcheson v. Hoffman,* 439 F.2d 821 (5th Cir. 1971); *Rickson v. Ward,* 359 F.Supp. 328 (S.D.Cal. 1973); *Arnold v. Rumsfeld,* 418 F.Supp. 146 (E.D.N.Y.1976); *Sofranko v. Froehlke,* 346 F.Supp. 1380 (W.D.Tex.1972).

The record is not devoid of facts supportive of the Navy's need for more physicians of West's speciality. According to the Secretary of the Navy at the time of the final denial in April, 1976, the Navy expected a shortage in the ensuing year of 43 family practice specialists, and West is such a specialist. Granting to the Navy broad room to make that kind of determination and to decide which of the persons under its jurisdiction should fill the shortage, we conclude that no further factual base was needed to justify denial of West's application for exemption.

## II.

The due process claim has remained an inchoate issue throughout these proceedings. It was not the primary basis upon which the district court granted West's petition, nor have counsel thoroughly briefed the due process question on appeal. Insofar as the due process claim was a factor in the decision below, the district court regarded the Navy's treatment of West's application for an exemption deficient in two respects:

1. No reasons were stated for the denial; and

2. The Navy failed to establish any standards to govern its consideration of applications for exemptions under DOD 1205.1.

The first objection is adequately met by our conclusion in Part I that the record does disclose the reason for the decision—the Navy's need for Dr. West's services. Because the determination is necessarily a product of military self-evaluation, the Navy was not required to develop a fuller factual record in support of its conclusion.

The second objection is also affected by our discussion in Part I. We regard DOD 1205.1 as authorizing the military departments to grant exemptions and delays, but not as mandating them to do so under any particular circumstances. It is true that it might be useful for the Navy to promulgate rules which give some substance to DOD 1205.1.[11] In *Appelwick v. Hoffman, supra,* at 407, n.5, this court expressed the view that the instruction was, perhaps, intended to do no more than "establish procedural forms, leaving the formulation of substantive rules to the military departments," and "[t]his statutory and administrative pattern appears to give the [military department] the power to establish whatever substantive guidelines it

---

8. See, for example, *Jenkins v. Commandant, First Naval District,* 303 F.Supp. 1150 (D.Mass. 1969), although the court did not express its test in terms of arbitrariness and irrationality.

9. See *Townley v. Resor,* 323 F.Supp. 567 (N.D. Cal.1970).

10. "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). See, also, *Antonuk v. United States,* 445 F.2d 592 (6th Cir. 1971). Cf. *Hammond v. Lenfest,* 398 F.2d 705 (2nd Cir. 1968).

11. To some extent, the Army has chosen this path; however, it does not appear that the Army regulations specify any criteria which, if met, guarantee that an exemption will be allowed. See *Ornato v. Hoffman, supra.*

deems desirable." This court had no occasion to consider in *Appelwick* whether due process might be offended if a military department chose to establish no substantive guidelines for considering applications for extension or delay under DOD 1205.1.

Whether and to what extent due process requires safeguards in connection with governmental actions depends on the nature of the interest involved. See *Board of Regents v. Roth,* 408 U.S. 564, 570–571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). West's interest in being free from his active duty obligation is unlike the government-created "liberty" or "property" interests which have been recognized in the procedural due process cases. See, *e. g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Of course, West's complaint is not with the procedures afforded to him but with the lack of an articulated standard for passing upon his request for a community hardship exemption. He argues that because the Department of Defense has empowered the military departments to grant such exemptions, the Navy must issue substantive regulations announcing standards to be followed in the processing of applications. As a general proposition, it is settled that an administrative agency is not required to promulgate detailed rules translating provisions governing its actions. See *American Power & Light Co. v. SEC,* 329 U.S. 90, 104–106, 67 S.Ct. 133, 91 L.Ed. 103 (1946); *SEC v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Because of the inherently discretionary nature of a decision under DOD 1205.1, and because the decision regarding West rested upon the Navy's need, we perceive no reason why the Navy should be foreclosed from administering the provisions of DOD 1205.1 without delineation of substantive guidelines. West has not called to our attention any case which would support such a result.

We therefore conclude that the denial of West's application for an exemption was within the proper exercise of the Navy's discretion and was free from constitutional defect. Accordingly, the order of the district court granting habeas corpus relief is reversed and the petition for a writ of habeas corpus is denied.