Lieutenant D. Craig MILLER, USN, Petitioner-Plaintiff,

v.

The Honorable W. Graham CLAYTOR, Jr., Secretary of the Navy, Rear Admiral James Grealish, USN, Treasure Island, San Francisco, California, Respondents-Defendants.

No. C–78–1457–WAI.

United States District Court, N. D. California.

March 15, 1979.

Richard P. Fox, Max Gest, of Richard P. Fox & Max Gest, A Professional Corp., Los Angeles, Cal., for petitioner-plaintiff.

G. William Hunter, Linda C. Jamieson, U. S. Attys., Civil Division, San Francisco, Cal., for respondents-defendants.

## MEMORANDUM OF DECISION

INGRAM, District Judge.

Plaintiff and defendants filed cross motions for summary judgment in this action. Upon consideration of the written authorities and oral argument heard on November 3, 1978, it is the opinion of this Court that summary judgment be granted for plaintiff, and that the action be remanded to the Community Essentiality Board, Bureau of Naval Personnel, for further consideration consistent with the views expressed herein.

Plaintiff, a cardiovascular surgeon commissioned in the United States Navy Reserve in 1972, has by his voluntary requests been repeatedly deferred from active duty under the "Berry Plan" to further his specialized medical education. Following notice to plaintiff that he report to active duty in July 1978, plaintiff sought and was denied an exemption from active service under Department of Defense (D.O.D.) Instruction § 1205.1(X)(D). That regulation provides that a military board will consider such an exemption request, and that when the request is based upon community essentiality or hardship, an appeal may be submitted to a higher military authority for a final determination of the matter. Plaintiff's request, based upon both community essentiality and hardship, was first reviewed and denied by the Bureau of Medicine and Surgery, and subsequently denied by the Community Essentiality Board comprised of Lieutenant Commander Brant, Medical Service Corps, and Commander Brideau, Branch Head of Medical Service Corps, under their authority delegated by the Chief of Naval Personnel. Additional consideration for exemption was then sought by plaintiff, his fellow staff surgeons, supervisors, and United States Senators Hatch and Hayakawa. Those appeals were reviewed at the Secretarial level of the Department of the Navy, and denied.

Plaintiff has appealed to this Court asserting that (1) his statutory obligation has expired, (2) he has been denied his substantive due process rights since the Navy has failed to promulgate sufficient substantive guidelines indicating the criteria necessary to meet the community essentiality standard within D.O.D. § 1205.1, and (3) he has been denied his procedural due process rights in that a proper review board of officers was never convened as required by D.O.D. § 1205.1, no appeal right was granted as required by that regulation, and no written findings set forth the reasons for the denial of the application.

There is disagreement as to the standard of review this Court should apply in reviewing a military exemption denial. Compare *West v. Chafee,* 560 F.2d 942, 944–5 (8th Cir. 1977) and *Karlin v. Reed,* 584 F.2d 365 (10th Cir. 1978) with *Nicholson v. Rumsfeld,* 425 F.Supp. 780, 782–3 (N.D.Tex.1977) and *Ornato v. Hoffman,* 546 F.2d 10 (2nd Cir. 1976). The *West* court, after noting the conflict, relied upon *Appelwick v. Hoffman,* 540 F.2d 404 (8th Cir. 1976) and *Roth v. Laird,* 446 F.2d 855, 856 (2nd Cir. 1971) in concluding that the appropriate determination is whether the exemption denial was arbitrary and irrational. The *Nicholson* court, in comparison, relied upon *Silverthorne v. Laird,* 460 F.2d 1175 (5th Cir. 1972) and *White v. Callaway,* 501 F.2d 672 (5th Cir. 1974) in concluding that the military decision need only have a basis in fact. The military, here and in each of the above cases, has advocated the arbitrary and capricious standard as preserving more military discretion. The *Nicholson* court took issue with the military's position by the astute observation that the basis-in-fact standard actually imposes a minimal burden upon the military authorities:

> "With further reference to the factual basis standard, it would seem that there could hardly be any standard less demanding. If administrators are unable to demonstrate some factual basis for their factual decisions, then meaningful judicial review would be impossible as there would be nothing to analyze except the rules themselves and the administrators' own assertions that they did, indeed, comply with those rules."

And, language in *West* also indicates that the tests are not as disparate as might appear upon first impression:

> ". . . Reaffirmation of the *Appelwick* standard of review does not eliminate all need for some factual foundation for a decision by the Navy. We agree that one ground for finding a decision to have been arbitrary and irrational is that it was made without any revealed reason or that the announced reason was without an adequate factual base. Nonetheless, when a reason is given, the amount of factual support necessary to meet the test varies with the nature of the reason."

Since the outcome of this case does rely upon the lack of an announced reason without an adequate factual base, either standard may be applied here, and I thereby find it unnecessary to resolve the standard of review issue at this time.

The Court now addresses the plaintiff's claims *seriatim.*

■ Plaintiff's argument that his eight year statutory duty has expired under 50 U.S.C.App. § 456(d)(1) is without merit. 50 U.S.C.App. § 454(*l*)(1) of the same Selective Service Act of 1967 deals more specifically with the computation of the period of a commissioned reserve officer in a medical specialist category. The section provides that a commissioned reserve member may be called to active duty who has not yet reached his thirty-fifth birthday. *Appelwick v. Hoffman,* 540 F.2d 404, 407 n.5 (8th Cir. 1976). Plaintiff is currently thirty-two years old and thereby eligible.

Plaintiff further argues that his normal six year expiration period as a reserve member under 10 U.S.C. § 651 has expired. Plaintiff overlooks that he voluntarily participated in the Berry Plan, thereby requesting deferment of his active service obligation until completion of his residency training, and expressly promising to perform two years of active duty at the program's completion. For the courts to interpret such a voluntary election as a means of escaping any obligation to the service whatsoever under the six-year statute, would, of course, force the Navy to eliminate deferments, thereby forcing the disruption of all reserve doctors entering residency programs. Plaintiff has clearly extended his six year obligation by his voluntary waiver incorporated in his deferment agreement.

Alternatively, plaintiff contends that there was either a unilateral or mutual mistake of law between himself and the Navy as to the interpretation of his statutory obligations, thus his interpretations should prevail. This Court interprets the

statutes· as set forth above consistent with the intent of Congress and common sense, and not according to plaintiff's reading of the statutes.

 Plaintiff's claim that he has been denied substantive due process by the inadequacy of guidelines or articulated standards within naval regulations must also fall. While it might be useful for the Navy to promulgate regulations which interpret D.O.D. § 1205.1, it is settled that an administrative agency is not required to promulgate detailed rules translating provisions governing its actions. *West v. Chafee,* 560 F.2d 942, 946–7 (8th Cir. 1977); *Appelwick v. Hoffman,* 540 F.2d 404, 407 n.5 (8th Cir. 1976). Thus, had the Navy promulgated additional standards interpreting D.O.D. § 1205.1, it would be obligated to rigidly adhere to those standards. *Rehart v. Clark,* 448 F.2d 170 (9th Cir. 1971); *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 972–3 (1959). Yet in the absence of such guidelines this Court will not impose them upon respondents.

 Plaintiff creatively argues that an additional substantive requirement has been added to D.O.D. § 1205.1 by a memorandum of April 10, 1975 drafted and circulated by Principal Deputy Assistant Secretary of Defense McKenzie. The memorandum is, however, phrased in precatory language, "encouraging" obligated reserve medical specialists confronted with non-specialty status in their chosen branch to pursue their specialties in alternate branches of the service rather than forego their field of interest. The memorandum does not, as plaintiff would like the Court to believe, require each branch of the service to undergo searches for overflow specialists in other branches prior to calling an obligated reserve specialist in that particular branch to active duty.

The procedural history of plaintiff's application for exemption is far more troublesome. Respondents have not contested that plaintiff's exemption application was processed by what could be fairly characterized as a file review; no written administrative findings or supporting reasoning exists.

Admittedly, the record is replete with informal representations in correspondence by different naval officers that a "need" exists in the Navy for general surgeons in that there is currently a "shortfall expected" below the allotted amount of general surgeons. Specifically, a memorandum by Commander Drew, JAGC, dated June 21, 1978, and a letter by Assistant Secretary of the Navy Hidalgo dated July 17, 1978, set forth numerical "projections" as to the anticipated shortfall. Neither form of correspondence is drafted under oath, nor supported by any certified administrative documentation.

 More importantly, the record is devoid of any finding, formal or informal, which discounts or refutes plaintiff's assertions of both community essentiality and hardship. Respondents have indicated that in their view mere conclusionary representations of need are sufficient to meet the necessary due process standard. The Court recognizes that there is case authority to support respondent's premise, and that "[m]easuring military need is peculiarly a military matter, the kind of undertaking the courts should be astute to leave to the military." *West v. Chafee, supra* at 946. Similarly, the nature of the military's decision under D.O.D. § 1205.1 is "inherently discretionary." Id. at 947.

On the other hand, D.O.D. § 1205.1 explicitly provides for exemptions based upon "community essentiality or hardship." Implicit within the inclusion of those words is the fact that the Navy must undertake *some* form of weighing process to determine just how essential the plaintiff is to the community, as compared to the Navy's current needs. Absent such a weighing process, the words "community essentiality or hardship" would be rendered totally meaningless. In the extreme, the Navy could indicate a proven shortfall of one doctor below allotment, and on that basis alone summon a doctor into active duty whose services are undeniably critical to a community. As persuasively stated in *Nicholson, supra,* pp. 784–5:

"The military must show some factual basis to support a finding that its own needs are greater if such a decision is to be upheld in the face of a *prima facie* case that Dr. Nicholson's services are essential to the community of Freeport. If this were not so, the military could tell a modern-day Albert Schweitzer that his skills were needed more by the armed forces than by the community of Labarene and no court could look behind this bald assertion of the fact . . . There is nothing whatsoever to indicate that the Board did any balancing of civilian against military needs . . . If there are any special factors to be considered in balancing military against civilian needs, the government has not suggested what they might be. . . ."

■ There is little doubt that the assertions by those highly respected individuals who have implored the Navy to grant plaintiff's community essentiality exemption have *prima facie* credibility. Plaintiff's fellow physicians and administrators have represented in emphatic language that plaintiff's two year term in active duty would be "totally incongruent" with plaintiff's training and the best interests of the country as a whole, and a "tremendous waste of manpower." Dr. Lars Vistnes, Chief of the Surgical Service Section at the Palo Alto Veteran's Administration Hospital, has stated that the loss of plaintiff's services to the V.A. Hospital would be an "absolute disaster" to the hospital's open heart surgery program. That program is purportedly emerging from a recent staff crisis, and performs approximately 250 open heart cases per year, drawing patients from Northern California, Oregon, Washington and Utah. The Navy's disposal of such an assertion without comment during the process of a community essentiality review is simply untenable.

This Court's requiring such a balancing of interests in the form of written findings does not, of course, imply that a full-blown adversary hearing, with right to cross-examination and a transcript, is necessary or desirable. A reserve member's interest in being free from his active duty obligation is unlike the government-created "liberty" or "property" interests which have been recognized in the procedural due process cases. *West, supra,* at 947; *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Reviewing courts have increasingly recognized the need for a meaningful record of the military decision process. *Sanger v. Seamans,* 507 F.2d 814, 818 (9th Cir. 1974); *United States v. Stickler,* 452 F.2d 907, 911 (9th Cir. 1971). As stated most recently by Chief Judge Wright, District of Columbia Circuit Court:

"The normal rule where a discretionary administrative decision is to be reviewed by a court (other than on a *de novo* basis) is that the agency must give sufficient indication of the grounds for its exercise of discretion that the reviewing tribunal can appraise that determination under the appropriate standards of review (and the applicant for relief can challenge it) . . . This basic concept has been re-iterated time and again . . . (at pp. 9, 10) . . . Perhaps the leading decision is Judge Leventhal's opinion for the Second Circuit in *United States ex rel. Checkman v. Laird,* 469 F.2d 733, 779–83, 787 (2nd Cir. 1972). As that discussion pointed out, (i) 'where the range of executive responsibility embraces the latitude to find in favor of the claimant on an issue, the matter must be considered, and if the conclusion is adverse, reasons must be stated, with support in a record basis in fact' [citation omitted]; (ii) 'the proper focus of a reviewing court is on the reasons given by the [board] and not on reasons that may come to light if and when a court rummages throughout the record in an effort to reconstruct on what basis the board might have decided the matter [citation omitted]; and (iii) the regulatory requirement for reasons' is a meaningful requirement, and one that cannot meaningfully be satisfied by a bare recitation . . . of the ultimate statutory [regulatory] criteria . . . ." (*Matlovich v. Secretary of the Air Force,* 591 F.2d 852 (D.C.Cir. 1978).)

Accordingly, respondents' denial of plaintiff's exemption application is vacated and the matter is remanded to the Navy for further proceedings consistent with this opinion. This opinion will serve as the findings of fact and conclusions of law. Appellant can, of course, seek judicial relief from any adverse decision made on this remand.