James Donald McDANIEL, M.D., Plaintiff,

v.

Edward HIDALGO, Secretary of the Navy, Defendant.

Civ. A. No. 80–1633.

United States District Court, District of Columbia.

Sept. 19, 1980.

Stephen Daniel Keeffe, Washington, D. C., for plaintiff.

John Oliver Birch, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This case comes before the Court on plaintiff's motion for a preliminary injunction [1] and defendant's motion for summary judgment, or in the alternative, to dismiss.[2]

---

1. A temporary restraining order was entered in the case on July 5, 1980, and was extended, pursuant to agreements by the parties on July 11, 1980, and July 31, 1980, until August 23, 1980. The motion for preliminary injunction was heard by the Court on August 22, 1980, and taken under advisement. The Court entered an Order on August 22, 1980, extending the restraining order pending further order of the Court.

2. The Court did not hear oral arguments with respect to the defendant's motion but concludes that such a hearing is not required since the arguments made in support of and in opposition to the plaintiff's motion for a preliminary injunction addressed most, if not all, of the issues raised in the motion for summary judgment. *See also* Local Rule 1 ·9(f).

## I

Very briefly, the facts are as follows: On or about August 20, 1973, the plaintiff signed a contract[3] with the Navy under the Armed Forces Health Professions Scholarship Program (Program), 10 U.S.C. § 2120 *et seq.* Plaintiff is currently a Lieutenant in the United States Naval Reserve. The Program was established to fill manpower needs after the draft of medical personnel was ended. *See* S.Rep.No. 92–827, 92d Cong., 2d Sess., *reprinted in* [1972] U.S. Code Cong. & Admin.News pp. 3329, 3335. At the time he signed his contract, plaintiff was not liable for service under the Universal Military Training and Service Act. Under the Program, the plaintiff incurred an active duty obligation and the Navy, in return, paid for his medical education and provided him with a stipend. On July 30, 1975, the plaintiff wrote the Navy seeking to delay his active duty obligation[4] so that he could participate as a civilian resident; the Navy approved, and his active duty obligation was postponed until after June 30, 1979. On September 13, 1978, the plaintiff requested another postponment of his active duty date and the Navy agreed to postpone his active duty date until July 1, 1980. On January 19, 1980, plaintiff requested a teaching assignment in a teaching facility and indicated his preference for a West Coast assignment. Finally, on March 22, 1980, plaintiff requested that he be released from his active duty obligation alleging that his services were essential to his community.[5]

At the time of his request for release from his active duty obligation, the plaintiff was employed as a psychiatric physician in Ottumwa, Iowa, described as the "medical hub" for a ten county area serving approximately 150,000 people. His application was supported by approximately 100 letters from members of the community and Iowa officials, including the Governor of that state.[6] Defendant does not seriously dispute the needs of the community in this case.

The Bureau of Medicine and Surgery recommended that the Commander of the Naval Military Personnel Command not accept the plaintiff's resignation. The Commander denied plaintiff's request on May 4, 1980, noting the needs of the Navy at the Naval Regional Medical Center in Portsmouth, Virginia. Plaintiff appealed that decision to the Secretary of the Navy who ruled on June 27, 1980, that plaintiff must report for active duty. Plaintiff then filed this action. The matter was thereafter reconsidered by the Secretary because it was found that the staffing figures originally prepared for the Secretary had been in error. The Secretary denied the plaintiff's request on July 21, 1980, citing as grounds that the granting of the request would not be in the best interests of the Navy.[7]

There is no genuine dispute as to any material fact in this case.

## II

Plaintiff argues that the Navy did not properly consider his request for release from active duty pursuant to Department of Defense Instruction 1205.1(X)(D) (DOD 1205.1(X)(D)) which provides:

Upon receipt of active duty orders any reserve officer and/or his employer may submit a request for a delay in entrance on active duty and/or exemption from active duty to a board authorized by the military department concerned to consider such cases. If such action results in disapproval, when the request is based on alleged community essentiality or hardship, the officer and/or his employer may

---

3. See Deft. Mo. Ex. A.

4. A person who participates in the Program incurs an active duty obligation of not less than one year for each year of participation in the Program. 10 U.S.C. § 2123(a). Plaintiff's obligation is now three years active duty.

5. See Deft. Mo. Ex. 5.

6. There were also those who opposed his release from his military obligation on the grounds that he should serve out his obligation to the Navy since it was the Navy that paid for his education.

7. See Deft. Mo. Ex. 7.

submit an appeal to a higher authority within the military department concerned for a final determination of the matter. DOD 1205.1, which is sometimes referred to as the "Berry Plan", has been the subject of numerous cases. *See Nicholson v. Brown,* 599 F.2d 639 (5th Cir. 1979); *Appelwick v. Hoffman,* 540 F.2d 404 (8th Cir. 1976); *Roth v. Laird,* 446 F.2d 855 (2nd Cir. 1971); *Miller v. Claytor,* 466 F.Supp. 938 (N.D. Cal.1979); *Karlin v. Mack,* 7 Military Law Reporter 2516 (S.D. Tex. Oct. 10, 1979). In those cases where DOD 1205.1(X)(D) is applicable, the defendant is required to carefully weigh just how essential the applicant for exemption is to the community as compared to, in this case, the needs of the Navy. *See, e. g., Miller v. Claytor, supra* at 941. This is so because DOD 1205.1(X)(D) was primarily designed "to protect communities from the sudden removal of practicing physicians upon whom they had come to rely". *Nicholson v. Brown, supra* at 647. The defendant here does not seriously contend that he engaged in such a weighing process, and if DOD 1205.1(X)(D) is indeed applicable, the Court would be required to remand the case to the defendant for further consideration of the application.

Such action is not necessary here, however, since in the view of the Court, DOD 1205.1 is inapplicable. That provision was written to implement the Universal Military Training and Service Act which subjected doctors and dentists to the draft. Specifically, it allowed medical and dental registrants to apply for commissions after receipt of induction notices and allowed them to defer active duty while completing their medical training. The plaintiff however, was not subject to induction under the above law; rather, he entered the Naval Reserve under the Program, 10 U.S.C. § 2120 *et seq.* Under the Program, the applicable directive is DOD 1215.14 which is specifically designed to implement the Program. DOD 1215.14 does not contain a "community essentiality exemption" and

only permits the defendant to release a member who is dropped from the Program "when such action would be in the best interest of the military department". *See* DOD 1215.14(IV)(H). Moreover, it provides that a member of the Program may not be dropped solely because he is willing and able to refund all payments.[7a] *See* DOD 1215.14(IV)(H)(2).

Plaintiff contends nevertheless, that even if DOD 1205.1 is not directly applicable to his case, it became applicable because it was incorporated and carried over by reference in DOD 1215.14. The Court finds this contention without merit. While it is true that DOD 1215.14 does make reference to DOD 1205.1, it does not incorporate any part of the latter directive except insofar as incorporating the moral and physical qualifications found in DOD 1205.1. *See* DOD 1215.-14(IV)(C). No other reference to DOD 1205.1 is contained in the entire directive. If there had been any intent to incorporate the community essentiality provision of DOD 1205.1, a simple reference would have sufficed. Such a reference would most likely have been inserted at DOD 1215.-14(IV)(H). Absent such a reference, it is logical to conclude that incorporation was neither desired nor intended.

The argument that DOD 1205.1 was amended in 1973, after the Program came into effect, and therefore must be considered an exemption under the Program, is likewise without merit. It may have been that at the time of the amendment to DOD 1205.1 in 1973, there were reservists who had entered the Navy under the "Berry Plan"; clearly the plaintiff in this case did not.[8]

While the cases cited by plaintiff in support of his application are interesting, those cases apply to members of the service brought in under the "Berry Plan" and for the reasons outlined above, are not applicable.

---

**7a.** Plaintiff has offered to refund all payments made by the Navy.

**8.** See also the discussion between Representatives Gross and Hebert concerning the legislation creating the program. 118 Cong.Rec. 8158 (1972).

Finally, in this connection, it is noted that the contract entered into between the plaintiff and the Navy makes no reference to a community essentiality exemption. There is simply no rule, regulation or contract provision permitting plaintiff's release from his active duty obligation based upon community essentiality or hardship. Absent such a rule, regulation or contract provision, the plaintiff is not now entitled to be released on that ground. *Cf., Nurnberg v. Froehlke,* 489 F.2d 843, 849 (2nd Cir. 1973); *DeWalt v. Commanding Officer,* 476 F.2d 440, 442 (5th Cir. 1973).

The Court hastens to add that it can find no equitable basis upon which it should intervene or seek to intervene in the defendant's determination. The purpose of the Program was to alleviate a critical shortage of medical personnel, and the Navy should be able to anticipate that persons who have obligated themselves under the Program will fulfill that obligation. Additionally, while Ottumwa may have a need for someone with plaintiff's expertise, the fact is that plaintiff was not a long time resident of the community upon which the community had come to rely. Rather, he had only entered into the community a few months prior to his application to be relieved of his active duty obligation. There is nothing to even insure that, if relieved of his obligation to the Navy, he would remain within the community. Furthermore, it cannot be overlooked that plaintiff found himself in the community as the result of postponements which the Navy granted to allow plaintiff to continue his medical education.

The Court concludes then that the defendant was not required to consider and weigh the community essentiality exemption when considering plaintiff's application. The only question was whether the granting of plaintiff release from the requirement to serve three years active duty was in the best interest of the Navy.

### III

The only remaining question is, applying the standards set forth in DOD 1215.14, did the defendant give proper consideration to plaintiff's request. In this Court's view, defendant has carefully considered the request and has stated his reasons for denying the application. The defendant has determined that the Navy has a need for plaintiff's services and nothing in the record suggests that that determination is arbitrary, capricious, or not according to law, or not supported by the facts.

The Court concludes that the plaintiff's motion for preliminary injunction must be denied and that the order maintaining the status quo pending consideration of the motion for preliminary injunction must now be vacated. Furthermore, the Court, finding that there are no genuine issues of material fact, and concluding that the defendant is entitled to judgment as a matter of law, will enter summary judgment for the defendant and dismiss the case with prejudice.