David G. **WHITE**, Plaintiff-Appellant,

v.

Howard H. **CALLAWAY**, Secretary of the Army, et al., Defendants-Appellees.

No. 74–1693

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 2, 1974.

Rehearing and Rehearing En Banc Denied Oct. 29, 1974.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Joel W. Westbrook, Waco, Tex., James A. Hazlitt, Houston, Tex., for plaintiff-appellant.

Anthony J. P. Farris, U. S. Atty., Olney G. Wallis, James R. Gough, Asst. U. S. Attys., Houston, Tex., for defendants-appellees.

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Reserve Private David White brought this action against the Secretary of the Army and White's Reserve Company Commander, seeking injunctive and declaratory relief from an order directing White to enter involuntarily upon active duty in the Army due to unsatisfactory performance of his Reserve duties. We affirm the district court's denial of relief from this order.

White was notified on August 5, 1972, by his Company Commander, Captain Robert L. Carlyle, to prepare for involuntary active duty for a period of eighteen months and seven days because of his absence without authority from annual active duty training during the period July 22, 1972 to August 5, 1972. Appellant concedes that there was a sufficient factual basis for the Army's deci-sion here that there was no valid medical excuse for White's absence from summer camp. The crux of White's appeal is that the order to report for involuntary active duty was nonetheless void because the Army failed to follow its own regulations in determining that White should be ordered to active duty.[1]

Two provisions of Army Regulation [AR] 135–91 are relevant to this dispute. AR 135–91, ¶ 5(d)(3), C 8 (Aug. 28, 1970), defined "satisfactory participation" in Reserve activities (such as would avoid involuntary activation) to include

Attendance at and satisfactory completion of annual training (AT), unless excused by proper authority as provided herein, or the member fails to attend or satisfactorily complete AT for reasons that are *not* within his control. (Emphasis in original)

AR 135–91, ¶ 11(b)(1), C 9 (April 8, 1971) read in pertinent part as follows:

11. Unexcused absences from annual training. . . .

b. The following procedures will apply:

(1) The commander (unit or CO, USAAC) *will determine* if the member was notified in sufficient time to comply, and whether or not emergency or cogent reasons existed for his absence. (Emphasis added)

Synthesizing the regulations, it is apparent that they required Capt. Carlyle to "determine" that Reserve Private White's absence was for reasons "within his [White's] control" before the Captain concluded that White's absence from annual training was unexcused and that involuntary activation was indicated. White claims that Capt. Carlyle did not make the determination required by the regulations prior to issuing the notice to prepare for active duty because

---

1. White also asserts that the trial court erred in denying his motion for taking additional testimony and for reconsideration. The only evidence introduced by White in support of this motion was a letter dated Sept. 28, which was introduced into evidence at the first trial but which White's present counsel was not aware of until after the hearing before the district court. Since no substantial new evidence was proffered to the trial court, it did not abuse its discretion in denying the motion.

"he made no inquiry of Reserve Private White himself, or conducted anything like an adequate investigation in order to make the necessary determination." Appellant's Brief at 9.

It is generally accepted that federal courts should decline invitations to review the discretionary rulings of the military. *See, e. g.,* Orloff v. Willoughby, 1953, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842; O'Mara v. Zebrowski, 3 Cir., 1971, 447 F.2d 1085, 1087 and cases cited. Nonetheless, where the military takes action against a serviceman, and that action is governed by applicable regulations, the military must adhere to its own regulations in taking such action. Antonuk v. United States, 6 Cir., 1971, 445 F.2d 592, 595; · Schatten v. United States, 6 Cir., 1969, 419 F.2d 187, 191; Smith v. Resor, 2 Cir., 1969, 406 F.2d 141, 146; *cf.* United States v. Joseph G. Moretti, Inc., 5 Cir., 1973, 478 F.2d 418, 425. "When [military] regulations prescribe specific steps to be taken to insure due process they must be substantially observed." Friedberg v. Resor, 2 Cir., 1971, 453 F.2d 935, 938. Thus, we may properly require of Capt. Carlyle and the Army a "determination," that is, a good faith review of White's record and a consideration of the surrounding facts and circumstances, prior to White's involuntary activation.

On this record, Capt. Carlyle clearly made a proper determination as required by AR 135–91. Before making his decision, Capt. Carlyle was aware that White had been attempting to obtain a medical discharge from the service, that White had taken a physical examination only eleven days before summer camp which showed him to be medically qualified for military service, that White had signed a statement acknowledging his obligation to attend annual training less than two weeks before the summer camp session began, that White had failed to appear for summer camp as required, that White knew he was subject to involuntary activation if he did not satisfactorily perform his Reserve obligation, that White had been contacted by a member of Capt. Carlyle's staff about his absence, that White had stated he was not going to summer camp because he had a discharge due him, and that White had not contacted his commanding officer to give any "emergency or cogent reasons" for his absence.[2] To require, notwithstanding all this, that Capt. Carlyle secure additional information, speak with White personally, or undertake some kind of formalized investigation would be to revise substantially the meaning of AR–135–91. It would be an improper, *ad hoc* construction of procedural niceties for a court to say the Army should have done things differently here. Holding the Army to its own regulations is one thing; imputing unnecessary procedural prerequisites into a regulation is something entirely different. As the Supreme Court said in Orloff v. Willoughby, *supra,* "[J]udges are not given the task of running the Army." 345 U.S. at 93, 73 S.Ct. at 540, 97 L.Ed. at 849. There was clearly a proper basis for ordering the active duty sanction, and thus the decision of the district court is

Affirmed.

2. White did subsequently attempt to speak with Capt. ·Carlyle, an attempt which the Captain rebuffed. However, this occurred only *after* White was alerted for involuntary active duty because of his failure to submit a cogent excuse for his nonparticipation in summer camp.