**John Woodward SPRINGSTEAD, Appellee,**

v.

**W. Graham CLAYTOR, Secretary of the Navy; Harold Brown, Secretary of Defense; General Lewis H. Wilson, Commandant of the U. S. Marine Corps; General Victor A. Armstrong, Commanding General, Marine Corps Air Station, Cherry Point, North Carolina; General R. J. Chadwick, Director, Judge Advocate Division, U. S. Marine Corps and United States of America, Appellants.**

No. 78–1459.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1978.

Decided Nov. 13, 1978.

Bruce H. Johnson, Asst. U. S. Atty., Raleigh, N. C. (George M. Anderson, U. S. Atty., Raleigh, N. C., on brief), for appellants.

David P. Voerman, New Bern, N. C. (Beaman, Kellum, Mills & Kafer, New Bern, N. C., on brief), for appellee.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

The Secretary of the Navy appeals a district court order directing him to accept Captain John Woodward Springstead's resignation from the United States Marine Corps. The court held that the Secretary's disapproval of the resignation was arbitrary and capricious because it involuntarily extended Springstead's otherwise limited period of service. We reverse.

Captain Springstead is now a regular commissioned officer in the Marine Corps, serving as a lawyer with the Judge Advocate's office of the Third Marine Division in Okinawa. Springstead joined the Marine Corps as a reservist in 1971 when he enrolled in the Corps' Platoon Leader Class (Law) Program. His service agreement required him to accept a reserve commission as a second lieutenant upon graduation from college and to serve on active duty for four years after completion of law school. Springstead commenced his period of active service as a reserve officer in October of 1974. Early the next year, however, he requested consideration for appointment in the regular Marine Corps. He subsequently accepted a presidential commission as a first lieutenant in the regular service on the condition that he retain his obligation to remain on active duty at least until October of 1978.

On July 11, 1977, the Marine Corps informed Springstead that he would be transferred from his station in North Carolina to Okinawa, an overseas post to which dependents were not authorized to accompany him. On August 17, 1977, Springstead submitted his resignation from the Corps effective upon the conclusion of his four-year active service obligation in October of 1978. The Commandant of the Marine Corps disapproved the resignation request, relying on a directive against accepting resignations from officers who are under orders to an overseas station where dependents are not authorized. Springstead's administrative appeal to the Secretary of the Navy was denied. Springstead contends that the Secretary's action was arbitrary and capricious because it abrogated his right to resign after the four-year period for which he contracted in his original service agreement.

I

As Springstead recognizes, appointment to the regular Marine Corps did not diminish the four-year active duty obligation that he owed under his service agreement as a reservist. Springstead also believes that his change in status did not lengthen his service obligation. We conclude, however, that the contract Springstead made when he became a reservist does not limit the duration of the obligation he subsequently assumed when he accepted a commission as a regular officer. Consequently, Springstead has no unilateral right to resign his commission after the satisfaction of his minimum service obligation.

Springstead's commission as a regular military officer has no definite duration. An officer serves until his appointment terminates in a manner prescribed by statute or regulation. The commission of a regular officer who originally enlisted as a reservist with a fixed period of service does not differ from the commissions of other regular officers in this respect. In providing for the appointment of qualified reservists as officers in the regular Marine Corps, 10 U.S.C. § 5573a describes their new commissions as permanent. The minimum service period for a reserve officer that Springstead retained, like the minimum obligation required of service academy graduates, does not affect the indefinite duration of his commission as a regular officer.

Springstead also argues that 10 U.S.C. § 651(a) limits to six years the maximum period for which members of the armed forces can be required to serve. That statute, however, was enacted as a part of the selective service laws that prescribe minimum service obligations for all American men. Universal Military Training & Service Act, ch. 144, § 1(g), 65 Stat. 79

(1951); see H.R.Rep.No.271, 82d Cong., 1st Sess., reprinted in [1951] U.S.Code Cong. & Admin.Serv. 1472, 1494-95. It does not limit the duration of a permanent commission in the regular service. Indeed, the statute specifically exempts from its operation men whose induction under the selective service laws is deferred because they are serving in reserve officer training programs such as the platoon leaders' class of the Marine Corps. Thus, the district court properly did not rely on this statute as a basis for granting Springstead relief.

II

As a regular Marine Corps officer, Springstead serves at the pleasure of the President under regulations promulgated by the Secretary of the Navy. Although Springstead may resign his commission, he is not released from his indefinite term of service until his resignation has been accepted by the Secretary acting on behalf of the President. See Mimmack v. United States, 97 U.S. 426, 432, 24 L.Ed. 1067 (1878); 10 U.S.C. § 885(b); Marine Corps Retirement and Separation Manual ¶ 5002.-1.* The Marine Corps Retirement and Separation Manual sets out the Secretary's directives for evaluating requests to resign from the regular service. Paragraph 5002.1 of the manual provides that resignations "shall be submitted so as to arrive at Headquarters Marine Corps not more than 14 months . . . prior to the requested effective date of separation." Since Springstead's minimum service obligation ran until October of 1978, he could not have submitted his resignation before August of 1977. By the time he became eligible to submit his resignation, however, he was already under orders to Okinawa. The Secretary then rejected his resignation under

* Section 714.4, 32 C.F.R., provides in part:

A resignation may be utilized by an officer to terminate his naval service or status. If his resignation is accepted by the Secretary, he shall be totally separated from the service

. . . . .

This regulation is supplemented by the Marine Corps Retirement and Separation Manual. The manual effective when the Secretary disap-

proved Springstead's resignation in 1977, MCO P1900.16A, was superseded by a revised manual, MCO P1900.16B, on March 23, 1978. The new manual makes no significant changes in the directives at issue in this case. All references in this opinion are to the manual effective in 1977 when the Secretary acted on Springstead's resignation.

¶ 5002.4a of the manual, which declares that resignations normally will be disapproved if "[o]rders have been issued overseas where dependents are not authorized." Although ¶ 5002.5 permits exceptions for undue hardship, Springstead offered no evidence of hardship in his case.

Springstead asserts that the two directives cannot be applied in tandem to prevent him from resigning upon the completion of his minimum service period. He contends that 10 U.S.C. §§ 671a and 671b, which allow extensions of military service in time of war or national emergency, are the only authority under which the Secretary can extend service obligations involuntarily.

Since Springstead serves under a regular commission of indefinite duration, the disapproval of his resignation in accordance with valid regulations did not extend his service obligation. On the contrary, Springstead himself extended it when he opted for a regular commission and left the reserves. Springstead has no unilateral right to leave the Marine Corps at any particular time. The Secretary can apply to his resignation request the same regulations and directives that are applicable to other Marine Corps officers.

█ The directives on which the government relies serve legitimate needs of the service. Paragraph 5002.4a, under which Springstead's resignation was rejected, prevents officers from resigning in order to avoid overseas assignments. Paragraph 5002.1, which prevented Springstead from resigning before he had received overseas orders, simply defines the earliest date at which the Marine Corps reasonably can evaluate resignation requests in light of projected manpower requirements. Because these directives are valid and because the Secretary applied them properly in this case, the disapproval of Springstead's resignation was neither arbitrary nor capricious.

*Reversed.*