**William Daniel NICHOLSON, III, Plaintiff-Appellee, Cross-Appellant,**

v.

**Harold BROWN, Secretary of Defense, et al., Defendants-Appellants, Cross-Appellees.**

No. 77–1782.

United States Court of Appeals, Fifth Circuit.

July 26, 1979.

Morton Hollander, Chief, Harland F.
Leathers, Atty., Appellate Section, Dept. of

Justice, Washington, D. C., for defendants-appellants, cross-appellees.

Tom Thomas, Dallas, Tex., J. Byron Holcomb, Bremmerton, Wash., for plaintiff-appellee, cross-appellant.

Before WISDOM, CLARK and FAY, Circuit Judges.

WISDOM, Circuit Judge:

*Major* William D. Nicholson, M.D., plaintiff-appellee, was a participant in the armed services' "Berry Plan". This plan permits deferment of a draftee's active military service pending completion of his medical training. Nicholson entered into the program in 1967. This was a critical time in Nicholson's professional career. This was also a critical time in the history of the country. The Berry Plan was a program that gave aspiring doctors a break. Shortly before he was called to active duty, Nicholson filed a *habeas corpus* petition seeking review of the decision of the Secretary of the Air Force denying his request for an exemption from active military duty on the ground of his essentiality to his community.[1] The district court granted the petition and entered an order having the effect of revoking Nicholson's active military obligation. On appeal, the Air Force contends that its action on Nicholson's exemption request is not reviewable, and that even if its action is reviewable the district court's decision exceeded the proper scope of review. Nicholson contends that the appeal is moot. We hold that the appeal is not moot, and that the Air Force's action was reviewable, although under a narrow standard of review. We hold that the district court exceeded its proper role in this case. We reverse its grant of the writ.

I.

The "Berry Plan" is a nonstatutory program sponsored by the Department of Defense and the Selective Service System to enable the military departments to secure their requirements for doctors without too seriously interfering with the professional studies and career of a prospective doctor. 32 C.F.R. § 58.1(a). Under the Berry Plan, a person vulnerable to the military draft may choose appointment to a military reserve component, thereby deferring his military service obligations while undertaking further medical training. 32 C.F.R. § 58.-1(b).

In September 1967 Nicholson volunteered to participate in the Air Force Medical Service Early Commissioning Program. He received an appointment as a *Second Lieutenant* in the Air Force Reserve, to enter active duty within one year from the date of his appointment to the Medical Corps, unless deferred, and to serve on active duty for a period of at least two consecutive years unless sooner relieved of such duty by proper authority. In 1971 Nicholson accepted an active duty deferment pending completion of his residency in general surgery at Parkland Memorial Hospital in Dallas, Texas. In 1974 Nicholson advised the Air Force that he would complete his residency training in 1976 and would be available for active duty in July 1976. He expressed preference for assignment to the southwest or southcentral United States. The Air Force accordingly assigned Nicholson to the Columbus (Mississippi) Air Force Base.

On June 25, 1976, Nicholson submitted an application for exemption from active duty based on "community essentiality". Paragraph 23 of Air Force Regulation 45–26, which implements the Department of De-

---

1. Department of Defense (DoD) Instruction 1205.1(X)(D) provides:

 D. Upon receipt of active duty orders any reserve officer and/or his employer may submit a request for a delay in entrance on active duty and/or exemption from active duty to a board authorized by the military department concerned to consider such cases. If such action results in disapproval, when the request is based on alleged community essentiality or hardship, the officer and/or his employer may submit an appeal to a higher authority within the military department concerned for a final determination of the matter.

fense Instruction 1205.1(X)(D) with respect to Air Force medical officers, provides in part:

On receipt of active duty orders, any Reserve medical or dental officer or employer may submit a request for delay in entrance on active duty or exemption from active duty to AFMPC/SG, Randolph AFB TX 78148. If disapproved, when the request is based on alleged *community essentiality or hardship*, the officer or employer may submit an appeal to the Secretary of the Air Force Personnel Council, Wash., D.C. 20330, for a final determination. (Emphasis added.)

Nicholson contends that he had performed weekend emergency room service at a hospital in Freeport, Texas since 1970 and that he planned to set up full-time practice in Freeport. Freeport is a Gulf Coast community some 300 miles from Dallas and remote from any other major metropolitan area. Nicholson submitted with his exemption application letters from several prominent Freeport residents. These explained that the Freeport area was in dire need of additional physicians, and especially of general surgeons such as Nicholson.

Shortly after Nicholson mailed his application, a panel of Air Force medical officers convened to consider his request. The panel unanimously denied Nicholson an exemption. The minutes of the panel meeting, admitted in the record in the *habeas* proceeding, show that the panel used the following criteria in determining community essentiality:

a. The services performed by the physician are essential to the maintenance of the health, safety or welfare of his community.

b. The removal of this physician from the community would result in an extreme shortage or elimination of an especially critical community service.

c. The service cannot be performed by other persons residing in the area concerned.

d. The physician cannot be replaced in the community by another physician who can perform such service within the time allotted by a postponement of entry onto active duty.

e. The physician will be ruled not essential to a community where he has never practiced.

f. The needs of the civilian community must be balanced against the needs of the military service.

According to the minutes, the panel doubted that Nicholson ever practiced in Freeport, even on a part-time basis, for Nicholson had in May 1976 requested a personal hardship exemption on the ground that his wife would divorce him if he left the Dallas area. The panel minutes noted that, regardless of whether Nicholson had practiced part-time in Freeport, "the needs of the Air Force were determined to be greater". The minutes state that the Air Force's needs for general surgeons were not being met adequately and conclude: "The consensus was that [Nicholson] did not satisfy the criteria for community essentiality".

Nicholson appealed unsuccessfully to the Air Force Personnel Council. He then filed an action for *habeas corpus*. The district court, after a trial on the merits, ruled that the Air Force had arbitrarily denied Nicholson's application. *Nicholson v. Rumsfeld*, 1977, N.D.Texas, 425 F.Supp. 780. The court recognized that the scope of review of military personnel decisions is narrow. It recognized that there is a presumption "that government officials carry out their duties in a lawful manner", *id.* at 783, but ruled that the presumption cannot stand in the face of a *prima facie* showing by the petitioner that his request was arbitrarily denied. The letters submitted by Nicholson in support of his exemption, in the court's opinion, made out a *prima facie* case for exemption. Nicholson's demonstration that he had complied with the pertinent regulations in requesting an exemption, together with his demonstration that he had made out a *prima facie* case for exemption, overcame the presumption of regularity of administrative action. The court considered the administrative record for evidence supporting the Air Force's denial of the appli-

cation. It found no support for the panel's belief that Nicholson could not have practiced in Freeport; it found that the panel's reference to Nicholson's earlier request for a personal hardship exemption was indicative of bias against Nicholson. The court also rejected as unsupported by the administrative record the panel's conclusion that the Air Force had a greater need than Freeport for Nicholson's services. Evidence brought out in the *habeas* proceedings showed that Columbus Air Force Base had a ratio of one surgeon per 7,000 to 12,000 people, a much higher ratio than Freeport's. Nicholson's letters put forward an opposite result. The court rejected the Air Force's contention that the relevant need was not the Air Force's need at the Columbus base, but its worldwide needs. The court concluded that the Air Force arbitrarily denied Nicholson's exemption request and that the denial was a breach of the Berry Plan agreement so material as to justify cancellation of Nicholson's active duty obligation under the Berry Plan. The court did not reach Nicholson's constitutional claims.

## II.

Appellee Nicholson has moved for dismissal of the appeal on mootness grounds. He argues that his six-year obligation to the Air Force Reserve expired in March of 1974, and that his 1971 commission to the Medical Corps expired on November 29, 1977. *See* 10 U.S.C. § 651(a). In his *habeas corpus* petition Nicholson requested a declaratory judgment as to his total period of military obligation. Now he contends that the district court declared that his statutory military obligation was to run only until November of 1977. The issue of the extent of his statutory obligation is not properly before this Court, he asserts, because the Air Force has failed to assign error to the district court's ruling in this regard. Be-

cause his military obligation has expired, according to the district court's judgment, so he argues, the Air Force no longer has control of or jurisdiction over him. Reversal of the judgment below will not effectively reinstate his active duty orders inasmuch as the Air Force has no further authority over him. The appeal, he concludes, is therefore moot.

We disagree. To the extent that the district court's judgment can be construed to encompass a declaration as to Nicholson's total military obligation,[2] that issue is properly before us because the appellants have appealed the entire judgment below. On the issue of Nicholson's total military obligation, we find that Nicholson will be properly subject to active duty orders if the district court's judgment is overturned.

The six-year obligation to which the district court referred is Nicholson's obligation under 10 U.S.C. § 651. Section 651(a), as worded at the relevant time,[3] stated in pertinent part: "Each male person . . . who becomes a member of an armed force before his twenty-sixth birthday . . . shall serve in the armed forces for a total of six years, unless he is sooner discharged because of personal hardship under regulations prescribed by the Secretary of Defense".

As Nicholson points out, inactive duty, as well as active duty, is counted towards completion of the six-year military obligation. 10 U.S.C. §§ 269, 511(b), 651(b). 10 U.S.C. § 672(d), however, authorizes the Secretary of the Air Force to "order a member of a reserve component under his jurisdiction to active duty, or to retain him on active duty, with the consent of that member." In October of 1967, when Nicholson entered the Early Commissioning Program, he signed a "Statement of Understanding" acknowledging that "my total obligated service will be

---

**2.** It is doubtful that the district court granted the request for a declaratory judgment. In its memorandum opinion the court mentioned in passing that the Air Force had "the right to assign Petitioner to an Air Force Reserve unit in the vicinity of Freeport for the remainder of his six-year obligation which ends November

29, 1977." This is the only reference in the opinion and the judgment to Nicholson's overall military obligation.

**3.** Section 651 was amended in 1977. Pub.L. No. 95–79, Title VIII, § 803(a), 91 Stat. 333. The amendment is not relevant to this case.

not less than six years" and that "my obligated tour of active duty will be not less than two years and that I hereby voluntarily agree to serve my active duty tour when so ordered by the Secretary of the Air Force unless sooner discharged or otherwise relieved of my active duty obligation in accordance with existing law or regulations . . . ." Nicholson thus consented to serve at least two years of active duty. At the time the Secretary ordered Nicholson on active duty Nicholson had not been discharged from the Air Force or otherwise relieved of his active duty obligation. The active duty order of July 1976, then, was authorized by 10 U.S.C. § 672(d). As the appellants concede, Nicholson's six-year military obligation under 10 U.S.C. § 651 expired in 1974. But Nicholson's voluntarily incurred active duty obligation, as the district court recognized, is separable from his section 651 obligation and is unaffected by the six-year limitation in section 651.[4]

Nicholson seems to argue that by his 1967 contract with the Air Force he agreed to serve only a minimum of two years' active duty *as part of his required tour of service* in the Air Force Ready Reserve.[5] The Secretary's contentions would be correct, he asserts, had he voluntarily extended his Ready Reserve Agreement for a period of time sufficient to complete two years of active duty. The Air Force has a form for extending a Ready Reserve Agreement, the record shows, but Nicholson never signed such a form. The Air Force, he urges, should have required him to sign the extension form as a condition of continuing his deferment.

The "Statement of Understanding" signed by Nicholson in 1967 is ambiguous concerning the extent of the active duty obligation assumed, and the very existence of an Air Force Ready Reserve Agreement extension form strongly supports Nicholson's assertion that he assumed an active duty obligation only as part of his overall Ready Reserve obligation. He ignores, however, other voluntary acts on his part that extended his active duty obligation beyond the period of his obligatory Ready Reserve service. When he applied for admission to the Early Commissioning Pro-

---

**4.** The Fourth Circuit Court of Appeals has recently ruled that section 651 does not operate to limit the duration of a permanent commission in the regular service. *Springstead v. Claytor*, 4 Cir. 1978, 586 F.2d 990, 992. This point does not completely dispose of Nicholson's case because Nicholson's commission in the Medical Corps was to expire in 1977 and the Air Force views the original duration of that commission as separable from the issue of Nicholson's active duty obligation. *Springstead* does, however, underscore the limited purpose and effect of section 651. Just as section 651 does not affect the duration of a permanent commission, it does not affect a contractual active duty obligation under the Berry Plan.

**5.** The Statement of Understanding signed by Nicholson states in full:

In the event I am tendered an appointment as a Reserve officer of the Air Force, I understand that upon acceptance of appointment I am required to serve on active duty and in a Reserve component for the minimum period established by law, unless sooner discharged in accordance with regulations and standards prescribed by the Secretary of the Air Force and the Secretary of Defense. I further understand that, although the appointment is tendered as a conditional appointment contingent upon my subsequent qualification as a physician, dentist, or veterinarian and my acceptance of an appointment in the Medical, Dental, or Veterinary Corps when and if tendered, my appointment in the Reserve of the Air Force will be for an indefinite period and my total obligated service will be not less than six years. Of the time required to be served in the Air Force Reserve, not less than five years must be served as a combination of active duty and Ready Reserve service. The remaining time required to complete my obligated service may be as a Standby Reservist. I understand that my obligated tour of active duty will be not less than two years and that I hereby voluntarily agree to serve my active duty tour when so ordered by the Secretary of the Air Force unless sooner discharged or otherwise relieved of my active duty obligation in accordance with existing law or regulations and standards prescribed by the Secretary of Defense or the Secretary of the Air Force. I further agree and understand that if I am not reappointed to the Medical, Dental, or Veterinary Corps for any reason, I may be discharged from my appointment in the Air Force Reserve.

gram in September 1967 Nicholson agreed to enter on active duty within one year from the date of his appointment to the Medical Corps "unless granted a delay by proper authority". Air Force Form 433. In 1972, upon graduation from medical school, Nicholson was commissioned in the Medical Corps. He requested a delay in entry on active duty for purposes of completing his residency training in Dallas. Nicholson's deferment was continued pending completion of his residency. Correspondence between Nicholson and the Air Force up to the time that Nicholson received his active-duty orders evidences a clear understanding on both sides that Nicholson would enter on active duty at the completion of his residency training.

■ Nicholson was therefore amenable to the July 1976 active-duty orders, and reversal of the district court's judgment would reinstate those orders and leave Nicholson again amenable to those orders.[6] The appeal is therefore not moot.

### III.

The Air Force contends that its decision denying Nicholson's exemption application is not judicially reviewable, citing a number of decisions, and especially *Orloff v. Willoughby*, 1953, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842; *United States ex rel. Schonbrun v. Commanding Officer*, 2 Cir. 1971, 403 F.2d 371, *cert. denied*, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460; *Roth v. Laird*, 2 Cir.

1971, 446 F.2d 855; and *Ornato v. Hoffman*, 2 Cir. 1976, 546 F.2d 10. In *Orloff* a physician was inducted into the Army under statutes making medical specialists specially subject to induction. By *habeas corpus* petition Orloff challenged the Army's failure to commission him as a medical officer. The Supreme Court denied review, warning that "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." 345 U.S. at 94, 73 S.Ct. at 540. The Court "found no case where this Court has assumed to revise duty orders to one lawfully in the service." *Id.*

*Orloff*, however, has not proved to be an absolute bar to the review of military personnel decisions. Decisions of the Court of Appeals for the Second Circuit recognize that military denials of personal or community hardship exemptions are reviewable for compliance with applicable procedural regulations and, if the exemption regulation is "mandatory"—contains language of command—for compliance with applicable substantive regulations.[7] Under that court's *Schonbrun-Ornato* doctrine, however, the military determination at issue in this case would not be reviewable, for neither Department of Defense Instruction 1205.-1(X)(D) nor Air Force Regulation 45–26, paragraph 23, contains language of command. They simply provide for the filing

**6.** This case is unlike the case of *Crowley v. United States*, 1975, E.D.Wis., 388 F.Supp. 981. In *Crowley* the court enjoined the Army from ordering to active duty a participant in the Army's Medical Service Early Commissioning Program. By the plaintiff's application to the program he agreed to report to active duty if the Army so required upon his graduation from dental school. The Army did not order Crowley to active duty until nearly two years after his graduation, and Crowley was not informed until nearly a year after his graduation that he would be ordered to active duty. The court noted that it was manifestly unfair to permit the Army to keep a participant in suspense for a long period after graduation. "In order to decide whether to establish a practice of their own or to associate with others, they have to know at the conclusion of their professional training whether they will shortly have to go

into the Army." *Id.* at 989. Nicholson's case presents no such equities. The Air Force, it is true, could have ordered Nicholson to active duty upon his graduation from medical school, and indeed it was prepared to do so. Nicholson, however, freely chose to defer his active duty obligation until completion of his residency training. Promptly upon Nicholson's completion of his residency the Air Force ordered him to active duty. Nicholson was not kept in suspense. He knew all along that he would receive his active duty orders at the completion of his residency training.

**7.** "To the extent that a military regulation is mandatory, the courts will see that it is observed." *Ornato v. Hoffman*, 2 Cir. 1976, 546 F.2d 10, 13 (citations omitted).

of exemption requests and spell out the exemption request process.

 The law of this circuit is otherwise. This Court has consistently held that military personnel decisions may be reviewable for compliance with applicable regulations. *E. g., White v. Callaway*, 5 Cir. 1974, 501 F.2d 672; *Silverthorne v. Laird*, 5 Cir. 1972, 460 F.2d 1175; *Mindes v. Seaman*, 5 Cir. 1971, 453 F.2d 197; *Pitcher v. Laird*, 5 Cir. 1970, 421 F.2d 1272. This is so even though the regulation does not contain language of command and thus appears to leave the personnel decision to the relatively unfettered discretion of the proper military authorities. *White v. Callaway, supra; United States ex rel. Hutcheson v. Hoffman*, 5 Cir. 1971, 439 F.2d 821. In *Mindes v. Seaman, supra*, this Court adopted a flexible approach to the reviewability of such military decisions. We said that an allegation of a deprivation of constitutional rights or of military violation of applicable statutes or regulations is a necessary but not sufficient condition of reviewability. 453 F.2d at 201. Among the factors to be considered in determining reviewability is "[t]he extent to which the exercise of military expertise or discretion is involved." *Id.* Although the discretionary character of the decision counsels against reviewability, it does not *ipso facto* preclude judicial review. See *id.* at 201–202.

In *White v. Callaway*, 5 Cir. 1974, 501 F.2d 672, a member of the Army Reserve sought review of the Army's decision to order him to active duty because of his unsatisfactory performance of reserve duties. White had been absent without authority from annual summer training camp. White's absence constituted unsatisfactory participation in Reserve activities under the pertinent regulations unless caused by reasons beyond his control. A separate Army regulation spelled out the procedures for determining whether a reservist's absence was excusable. Like the regulation at issue here, that regulation did not spell out decisionmaking criteria in any detail, and the

court recognized that the ruling was left largely to the discretion of White's company commander. The court construed the regulation, however, to require of the company commander a "good faith review of White's record and a consideration of the surrounding facts and circumstances". *Id.* at 674. The court, accordingly, held the action to be reviewable to the extent of determining whether White's case was reviewed and determined in good faith. Similarly, in *United States ex rel. Hutcheson v. Hoffman*, 5 Cir. 1971, 439 F.2d 821, we held that an Army hardship exemption decision under the same regulation that was at issue in *Schonbrun* and *Ornato* was reviewable for arbitrariness.

 *White* and *Hutcheson* establish that military personnel decisions under facially "nonmandatory" military regulations may, in the proper circumstances, be reviewed for arbitrariness. That the pertinent military regulation does not indicate a particular decision on a given set of facts does not bar all judicial review whatsoever. The command that the proper officials make a decision binds them to make a good faith, nonarbitrary decision. Our cases, however, are mindful of the Supreme Court's warning in *Orloff* against judicial intrusion into legitimate military matters. *Mindes* cautions courts to dismiss a petition that alleges military noncompliance with pertinent regulations if the claim is tenuous or if review will excessively interfere with military functions. In *Silverthorne v. Laird*, 5 Cir. 1972, 460 F.2d 1175, we upheld the dismissal of such a petition on the pleadings because the claim was frivolous. *Id.* at 1187. And the conclusion of reviewability does not entail judicial second-guessing of military personnel decisions. Such decisions are reviewable only for arbitrariness. The touchstone often used is whether the decision had any "basis in fact", *United States ex rel. Hutcheson v. Hoffman*, 5 Cir. 1971, 439 F.2d 821, 824, the narrowest standard of review known to the law.[8]

---

8. *Hutcheson*'s use of the formulation "basis in fact" might appear to put the law of this Circuit in conflict with that of other circuit courts of appeals holding that military application of

■ Applying these principles, we hold that the Air Force's action on Nicholson's application was properly reviewable. The Department of Defense instruction and the Air Force regulation do not in terms require the Air Force to grant a community essentiality exemption; they do contemplate the availability of such an exemption. Like the regulations involved in *White v. Callaway, supra,* they implicitly require that the Air Force authorities make a good faith, nonarbitrary decision. Finally, *Hutcheson* implicitly holds that review of military hardship exemption decisions is proper under the *Mindes* criteria.

■ We are persuaded, however, that the district court overstepped the limits of its review authority. The Air Force's determination that Nicholson's services were not essential to his community had an adequate basis in the facts. The denial of Nicholson's exemption request was not arbitrary or capricious.

The district court, in ruling in favor of Nicholson, focused primarily on the Air Force review panel's treatment of the issues whether Nicholson had previously practiced in Freeport and whether Freeport's need for Nicholson's services exceeded the Air Force's need. The court virtually ignored the panel's general conclusion that Nicholson "did not satisfy the criteria for community essentiality". The materials submitted by Nicholson in support of his application left little doubt that Nicholson had never practiced in Freeport on a full-time basis.

He had performed only emergency room service on weekends in Freeport. At least two general surgeons were already practicing in Freeport. On the face of it, then, Nicholson's application failed to satisfy review criteria "b" (whether the removal of Nicholson from the community would result in an extreme shortage of an especially critical community service) and "c" (whether the service performed by Nicholson can be performed by others residing in the area). The materials attested to a shortage of general surgeons in Freeport. But because they showed that Nicholson had never resided or practiced on anything approaching a full-time basis in Freeport the record demonstrated that Nicholson's "removal" would not aggravate that shortage. Behind the Air Force's requirement that a physician have practiced in the community where he is essential (criterion "e") is a reasonable view that the exemption is intended to protect communities from the sudden removal of practicing physicians upon whom they have come to rely. It is not to enable communities to fill currently unmet needs by recruiting physicians who because of their impending active duty obligations have no market leverage. "The community hardship provisions were apparently designed to prevent the loss of citizens whose absence would have an immediate, detrimental impact on their community, such as the loss of a community's only physician." *United States ex rel. Hutcheson v. Hoffman,* 5 Cir. 1971, 439 F.2d 821, 823. The

"nonmandatory" regulations is reviewable only for arbitrariness. *See Karlin v. Reed,* 10 Cir. 1978, 584 F.2d 365; *West v. Chafee,* 8 Cir. 1977, 560 F.2d 942. The conflict might be more apparent than real. The "basis in fact" test appears to have arisen in cases involving review of military determinations as to conscientious objector status. *See, e. g., Silverthorne v. Laird,* 5 Cir. 1972, 460 F.2d 1175. To the extent that the "basis in fact" test implies record review it might seem inappropriate in the context of a challenge to an Air Force denial of a hardship exemption, inasmuch as exemption decisions, unlike conscientious objector status determinations, *see* 32 C.F.R. Part 888e, need not be made on a formal record. In passing on exemption applications, however, the Air Force does examine the applicant's personnel file, which constitutes a record of sorts. No great

mischief is done so long as the "basis in fact" test is used not as an ultimate test but as a tool in determining whether a determination is arbitrary or capricious. If, for example, the military reviewing authorities rest the denial of an exemption request on a factual determination that is completely contrary to the facts as they appear in the applicant's file, the determination could be overturned as arbitrary because lacking a basis in fact. The basis in fact test oversteps its proper function, however, when it is used to overturn a decision that rests on assertions of fact that are not contradicted by the evidence in the applicant's file but that simply lack support in record evidence. To use the basis in fact test in that way would be to impose improperly a requirement that the military decide the issue on the basis of a record.

panel had a firm basis for denying Nicholson's application for failure to meet criteria "b" and "c", and its stated conclusion adequately encompasses such a finding.[9]

The panel's determination is also supportable on its stated ground that Nicholson had never, in a pragmatic sense, "practiced" in Freeport (criterion "e"). The district court felt that this conclusion was wholly unsupported and suggested that the panel's conclusion was a personal affront to the Freeport citizens who had written on Nicholson's behalf. We disagree. The panel did not question the integrity of the authors of the letters. Rather, the panel read the letters as demonstrating that Nicholson had merely done weekend emergency room service. Such service is not tantamount to "practice" in the ordinary sense. Because the panel's interpretation of the Department of Defense Instruction and the regulation is not "plainly erroneous" we are constrained to accept it. *Udall v. Tallman,* 1965, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616; *Bowles v. Seminole Rock Co.,* 1945, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700.

Nicholson contends that it was improper for the review panel to rely on the community essentiality criteria. The criteria, he says, have never been formally adopted by the Air Force, have never been approved by the Department of Defense, and have never been published. He does not challenge the substance of the criteria or suggest that the military cannot rely on reasonable interpretative rules or guidelines. He objects rather to the panel's use of the criteria without prior warning and contends that the lack of notice deprived him of the opportunity to support his application with documentation designed to demonstrate that his case satisfies the stated criteria.

The Administrative Procedure Act, 5 U.S.C. § 552(a)(2)(A), arguably obligates the Air Force to make available for public copying and inspection any agency materials in the nature of final adjudicative opinions.[10] Like any administrative agency, however, the Air Force may at its discretion announce and apply new rules in an adjudicative proceeding. *SEC v. Chenery Corp. [Chenery II],* 1947, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995. "[T]he choice between proceeding by general rule or by individual ad hoc litigation lies primarily in the informed discretion of the administrative agency." *Id.* at 203, 67 S.Ct. at 1580; *see also Mehta v. Immigatration & Naturalization Serv.,* 2 Cir. 1978, 574 F.2d 701, 705; *NLRB v. Beech-Nut Life Savers, Inc.,* 2 Cir. 1968, 406 F.2d 253, 257, *cert. denied* 394 U.S. 1012, 89 S.Ct. 1624, 23 L.Ed.2d 38. If agencies are free to announce and apply new rules in adjudicative proceedings, *a fortiori* they are free to announce and apply interpretations of existing regulations. To be sure, the application to a case of new principles announced in the course of deciding that case may be so tinged with unfairness as to amount to an abuse of administrative discretion. *See, e. g., SEC v. Chenery, supra,* 332 U.S. at 203–04, 67 S.Ct. 1575. We find no abuse of discretion here. The

---

**9.** The Air Force is exempt from the requirement of section 8 of the Administrative Procedure Act that adjudicative decisions include a statement of findings, conclusions, and reasons, 5 U.S.C. § 557(c), by virtue of section 5{a) of the A.P.A., which exempts from the Act's adjudicative procedural rules adjudicative determinations to the extent they involve "the conduct of military or foreign affairs functions". 5 U.S.C. § 554(a)(4). Nor do Air Force regulations require that an applicant be provided a statement of reasons for the denial of his community hardship exemption. The military is arguably subject to the A.P.A. § 6(e) duty to provide "a brief statement of the grounds for denial" of such an application. 5 U.S.C. § 555(e). The statement of the criteria applied by the review panel, a copy of which was attached to the notice of denial sent to Nicholson in June of 1976, satisfies the requirements of section 6(e).

**10.** Although the Air Force is specifically exempted from the Act's adjudicative procedure requirements, nothing in the Act appears to exempt it from the Freedom of Information Act. The Air Force is subject to those provisions if the term "agency" in the A.P.A. is broad enough to encompass military authority of the sort involved here, as indeed it appears to be. *See* 5 U.S.C. § 551(1); *United States ex rel. Schonbrun v. Commanding Officer,* 2 Cir. 1968, 403 F.2d 371, 375 n. 2.

criteria that the review panel relied upon seem to us entirely reasonable glosses on the term "community essentiality". They are not such a new departure that they could not reasonably have been foreseen. It does not appear that Nicholson attempted at any time to supplement his application with additional supporting materials. We do not perceive, moreover, how Nicholson could possibly overcome the defects in his original application. We have upheld the criteria as acceptable administrative interpretations. Nicholson's supporting matter, as we noted above, reveal on the face of it that Nicholson cannot satisfy the criteria.

Nicholson argues also that the Air Force failed to follow its own regulations in processing his request. Air Force Regulation 45–26(23) provides that a denied exemption request may be appealed to the Secretary of the Air Force Personnel Council. Nicholson points out that both the administrative and the trial record are devoid of evidence that the Personnel Council exists or that it ever met to consider his appeal. The only reference in the record to Nicholson's appeal is the letter from a Colonel Hansen to Nicholson informing him that the Secretary denied his request "upon recommendation of the Air Force Personnel Board". Administrative action, however, comes before the courts clothed with a presumption of regularity. *Hynes v. Grimes Packing Co.*, 1949, 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231; *United States v. Pierce Auto Freight Lines*, 1946, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821. Absent a showing to the contrary, we must presume that the Personnel Council met and duly considered Nicholson's appeal, as Colonel Hansen represented. The trial court record is devoid of evidence to the contrary.

Nicholson urges that the absence from the record of the Personnel Council's recommendations or any statement of the Council's reasons for recommending denial demands affirmance of the district court's judgment. He relies on *Sanger v. Seamans*, 8 Cir. 1974, 507 F.2d 814. In *Sanger* the Court reversed a decision upholding the Secretary of the Air Force's denial of an exemption claim based on conscientious objection because the record did not contain the Personnel Council's recommendation or statement of reasons but only the Secretary's conclusory statement to Sanger that he failed to meet the requirements for conscientious objector status.

The reversal in *Sanger*, however, was for the Air Force's noncompliance with its own regulations. Part 888e of 32 C.F.R. sets forth exhaustively the procedures for processing applications for conscientious objector status. Part 888e.28 requires that the Secretary make the final decision "based on the entire record" and requires that "[t]he reasons for an adverse decision . . . be made a part of the record." The *Sanger* court found that Sanger's case could not be reviewed because the Air Force had failed to articulate adequately its reasons for denying Sanger's application. In the instant case, however, the governing regulation does not require a decision on the record. Nicholson, moreover, was supplied a statement of reasons in the form of the review panel's minutes. The Secretary gave no reasons for the Personnel Council's recommendation, it is true, but the regulations did not require him to do so.[11] Our Court often disposes of appeals without opinion. Rule 21, Local Rules of the United States Court of Appeals for the Fifth Circuit. We see no reason to hold the Secretary to a duty to state reasons in affirming and adopting recommended decisions of the review panel.

We reject, finally, the district court's conclusion that the review panel's reference to Nicholson's prior request for a personal hardship exemption demonstrated bias against Nicholson. We agree with the district court that the bare fact that Nicholson once applied for a personal hardship

---

11. Even in conscientious objector cases, as the *Sanger* court recognized, the Secretary's failure to state detailed reasons for denial of a claim is not fatal if the reasons for the denial can be gleaned with reasonable certainty from the administrative record. *Sanger v. Seamans, supra,* at 818.

exemption was irrelevant to the issue of his entitlement to a community hardship exemption. But certainly representations made by Nicholson in that earlier application were data of relevance to the question of community essentiality. Nicholson's personal hardship exemption application, made just one month before the review panel considered his community essentiality application, was strong evidence that Nicholson was residing in Dallas, and not in Freeport. It also tended to suggest that Nicholson might not have intended to remain in Freeport for long. The evidence before the district court did not rise to the level of the "substantial showing" required for maintaining a claim of personal bias on the part of an administrative tribunal. *Roberts v. Morton,* 10 Cir. 1976, 549 F.2d 158, *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95. Nor does it appear that Nicholson raised the issue of bias on administrative appeal. He is therefore barred from raising it now by the general rule that claims of administrative bias he raised as soon as the claimant has reasonable grounds to believe that bias tainted proceedings on his claim. *Marcus v. Director, Office of Workers' Compensation Programs,* 1976, 179 U.S.App.D.C. 89, 548 F.2d 1044; 5 U.S.C. § 556(b).

■ We hold that the Air Force adhered to its own regulations in processing Nicholson's request in good faith. We REVERSE and VACATE the district court's grant of writ. The district court did not reach the appellee's constitutional claims of denial of due process. Nor do we.

REVERSED.