Barney J. TEARNEY, Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD; and T. Allan McArtor, Administrator, Federal Aviation Administration, Respondents.

No. 88–4558
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 4, 1989.
Rehearing and Rehearing En Banc
Denied May 12, 1989.

Lawrence B. Smith, Tucson, Ariz., for petitioner.

Karen R. Bury, F.A.A., and John M. Stuhldreher, Gen. Counsel, Washington, D.C., for respondents.

Before POLITZ, KING and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

Barney J. Tearney, a pilot for Southwest Airlines, was sanctioned for taxiing his aircraft while passengers were standing, in violation of Federal Aviation Regulations (FAR), 14 C.F.R. § 91.9. Tearney petitions for review of the National Transportation Safety Board's (NTSB) decision affirming the Federal Aviation Administration's (FAA) ruling that he violated section 91.9. He claims that the FAA violated the Administrative Procedure Act (APA) in its adoption of the taxiing rule. He also questions the constitutionality of the sanctioning power. For the reasons assigned we deny the petition for review.

### Background

On November 11, 1985, Tearney was captain of a Boeing 737 being operated as Southwest's flight 360 from New Orleans to Dallas. Passengers were standing in the aisle as Miranda taxied from the terminal to the runway. The Administrator of the FAA suspended Tearney's airline transport pilot's certificate for seven days for violating 14 C.F.R. § 91.9 which provides that "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."

Tearney appealed the order of suspension to the NTSB, claiming that his conduct did not violate section 91.9, and asserting that his actions were in accordance with Southwest Airlines procedures. The administrative law judge (ALJ) continued Tearney's hearing until the NTSB issued its decision in *Administrator v. Lawson,* NTSB Order No. EA–2419 (1986), *reconsideration denied,* NTSB Order No. EA–2466 (1987). In *Lawson* the NTSB ruled that taxiing while passengers were standing constituted a *per se* violation of section 91.9.

Ultimately the ALJ upheld the Administrator. In a review which consolidated the appeals of Tearney and two other pilots, *Administrator v. Miranda, Logan, and Tearney,* NTSB Order No. EA–2738 (1988), the NTSB rejected the appeals and affirmed the orders of suspension. Tearney

timely petitioned this court for review of the NTSB decision.

### Analysis

As we observed in our disposition of the petitions for review by the other two pilots, Miranda and Logan, our "review of an agency's decision is circumscribed. We may consider only whether the agency's findings and conclusions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'unsupported by substantial evidence.'" *Miranda v. National Transportation Safety Board*, 866 F.2d 805 (5th Cir.1989) (citing 5 U.S.C. § 706(2) (A and E)). The Supreme Court has underscored that "the ultimate standard of review is a narrow one." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). We consider Tearney's petition under this narrow standard.

■ Tearney contends that the FAA violated the APA by using the adjudicatory process to institute the rule prohibiting taxiing while passengers are standing. Tearney begins this argument by pointing out that in June of 1987 the FAA adopted through formal rulemaking a regulation concerning carry-on luggage, 14 C.F.R. § 121.589. *See* 52 Fed.Reg. 21476 (1987). He then suggests that because the FAA adopted the carry-on luggage regulation by formal rulemaking it could have implemented its taxiing rule in the same manner. While this is an obviously accurate observation, it provides Tearney little surcease. That the FAA could have promulgated its taxiing rule through formal rulemaking does not mean that it should have done so. The FAA has broad discretion to proceed via formal rulemaking or on a case-by-case basis when it addresses safety concerns. As we held in *Miranda v. National Transportation Safety Board*, in choosing the latter method it committed no error.

In *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947) (citation omitted), the Supreme Court unequivocally stated that an agency must retain power to deal with the problems on a case-to-case basis if the administrative process is to be effective. There is thus a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency.

In *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771–72, 40 L.Ed.2d 134, 154 (1974), the Supreme Court reaffirmed *Chenery* and held that an agency "is not precluded from announcing new principles in an adjudicative proceeding and that the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion."

In our related decision on behalf of Southwestern pilots Miranda and Logan, as well as in *Nicholson v. Brown*, 599 F.2d 639, 648 (5th Cir.1979), we relied on *Chenery* in reaffirming that an administrative agency "may at its discretion announce and apply new rules in an adjudicative proceeding" (citation omitted). In *Nicholson* we stated that "[i]f agencies are free to announce and apply new rules in adjudicative proceedings, *a fortiori* they are free to announce and apply interpretations of existing regulations." *Id.* at 648. *Nicholson* also recognized the possibility that the application of new principles announced in an adjudicative proceeding "may be so tinged with unfairness as to amount to an abuse of administrative discretion." *Id.* at 648. We stressed, however, that in order to constitute such an abuse, an adjudicative rule must be "such a new departure that [it] could not reasonably have been foreseen." *Id.* at 649.

The FAA's taxiing rule may not be said to be "such a new departure" from its other regulations as to be considered unforeseeable. The taxiing rule is not a departure from the general safety requirements set forth in section 91.9, but is, rather, a specific articulation of what is required by that section. Moreover, the taxiing rule was foreseeable. We are mindful of the fact that the NTSB, charged by Congress with special responsibilities in

the area of transportation safety, concluded that "the general policy that passengers must be seated before the aircraft departs the boarding area ... is a well-established safety policy...." *Administrator v. Lawson*, NTSB Order No. EA–2738 at 6 (1988). We therefore conclude and hold that inasmuch as there was no unforeseeable departure, there was no abuse of agency discretion.

■ Tearney next alleges that the FAA violated section 552(a)(1) of the APA by failing to publish the taxiing rule in the *Federal Register* as a new policy. This claim also founders. Section 552(a)(1) provides that:

> Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

Under this section, persons with actual notice of a rule, even though unpublished, are held accountable. Southwest had notice of the taxiing regulation and made the FAA's position known to its pilots through a Southwest Airlines interoffice memo dated April 8, 1985, advising that:

> The FAA has informed us that they are taking the position that taxiing while passengers are standing in the aisles is a *per se* violation of *FAR 91.9*. They further have informed us that in the future, they will take enforcement action against any pilot they believe did so.

Thus, the taxiing rule is enforceable against Southwest pilots despite any failure of publication of the rule in the *Federal Register*.

■ We are not persuaded, however, that publication in the *Federal Register* was obligatory. The APA directs publication only of "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D). The *Lawson* case taxiing rule is not a statement of general policy but, rather, is an expression of a specific

application of the policy announced in section 91.9. As such, publication of the taxiing rule under section 552(a)(1)(D) was not mandated.

■ Tearney's next claim is that the FAA's failure to publish or promulgate its certificate-sanction policy violates the APA. He argues that the FAA is not empowered to authorize certificate actions as a sanction for a safety violation. We disagree. The Federal Aviation Act provides specific authority for suspension of airman certificates. Title 49 U.S.C.App. § 1429(a) (1982) states in part:

> the Secretary of Transportation may issue an order amending, modifying, suspending, or revoking, in whole or in part, any type certificate, production certificate, airworthiness certificate, airman certificate, air carrier operating certificate, air navigation facility certificate (including airport operating certificate), or air agency certificate.

Moreover, in *Komjathy v. NTSB*, 832 F.2d 1294, 1296 (D.C.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2825, 100 L.Ed.2d 926 (1988), our D.C. Circuit colleagues held that:

> There is a clear statutory basis for the FAA's policy of suspending airman certificates as a sanction for violation of FARs. The Federal Aviation Act provides the Administrator of the FAA broad discretion to suspend airman certificates upon a determination that the safety and public interest so require. 49 App.U.S.C. § 1429(a). It is settled that the authority may be used for the purpose of suspending an airman certificate as a disciplinary sanction for violation of FARs. *See, e.g., Go Leasing, Inc. v. NTSB*, 800 F.2d 1514, 1519–21 (9th Cir. 1986); *Pangburn v. Civil Aeronautics Board*, 311 F.2d 349, 354–56 (1st Cir. 1962).

Given the express power granted by the Federal Aviation Act and the controlling precedents, Tearney's contention that the FAA cannot suspend his certificate under section 1429(a) must be rejected.

Tearney's final claim is that the "public interest" standard, under which the FAA has the authority to suspend an airman's certificate, is unconstitutionally vague. We find no merit in this contention. Title 49 U.S.C.App. § 1429(a) provides that an airman's certificate may be suspended upon a determination "that safety in air commerce or air transportation and the public interest requires" such suspension. The statute also states that the NTSB may "amend, modify or reverse the Secretary of Transportation's order if it finds that safety in air commerce or air transportation and the public interest do not require affirmation of the Secretary of Transportation's order." *Id.* This public interest standard, governing both the FAA and the NTSB, has been held by our Ninth Circuit colleagues to be synonymous with public safety. *Holmes v. Helms*, 705 F.2d 343 (9th Cir.1983). We agree. We also agree "that a 'public safety' standard [is] sufficiently definite to satisfy due process." *Reid v. Engen*, 765 F.2d 1457, 1463 (9th Cir.1985) (citing *Holmes v. Helms* ). The challenged rule and action by the FAA pass constitutional muster.

THE PETITION FOR REVIEW IS DENIED.